**In re Brenda BATES, Debtor.**

**Bankruptcy No. 92 B 19291.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 6, 1993.

Jack McCullough, Chicago, IL, Trustee.

Michael Sherman, Chicago, IL, for GMAC.

Melvin J. Kaplan, Bennett A. Kahn, James M. McArdle, Chicago, IL, for debtor.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 13 case comes before the Court on what is usually a routine matter: a debtor's motion to avoid a lien on wages that were deducted prepetition in order to enforce a judgment. The appropriateness of such motions was affirmed, over various creditor objections, in *In re Weatherspoon*, 101 B.R. 533 (Bankr.N.D.Ill.1989). In the present case, a new attack on these lien avoidance motions has been mounted by General Motors Acceptance Corp. ("GMAC"), the creditor which commenced the wage deduction proceeding here. GMAC asks the court to reject the reasoning of *Weatherspoon*, and makes two new arguments based on a change in the Illinois personal property exemption law and on a recent decision of the United States Supreme Court. The parties have made oral arguments and submitted briefs in support of their respective positions. For the reasons stated below, the Court rejects GMAC's arguments and grants the debtor's motion.

### Jurisdiction

This Court has jurisdiction to hear the debtor's motion pursuant to 28 U.S.C. § 1334(a)–(b), 28 U.S.C. § 157(a), (b)(1)-(2), and General Rule 2.33 of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### Facts

The relevant facts are undisputed. On August 21, 1991, GMAC obtained a judgment against the debtor in an amount exceeding $6,500. On or about June 25, 1992, GMAC attempted to collect this judgment by instituting a wage deduction proceeding under Illinois law and consequently causing a wage deduction summons to be served on the debtor's employer. As explained below, this summons required the employer to withhold a portion of the debtor's wages, subject to order of the state court. The return date for the summons was October 9, 1992. The debtor commenced this Chapter 13 case on August 27, 1992. Thus, no wage deduction order was ever entered by the state court. The debtor's employer is still holding $312.87 of the debtor's wages in connection with the wage deduction summons.[1]

When commencing this case, the debtor listed GMAC as an unsecured creditor on her schedules. She also disclosed that, pursuant to Ill.Rev.Stat. ch. 110, para. 12–1001(b), she claimed exemptions for various items of personal property with a worth of $1004. The debtor was entitled to claim an exemption not exceeding $2000 in personal property of any nature. Shortly after filing the pending motion, the debtor amended her claimed exemptions to include the wages deducted pursuant to the wage deduction summons procured by GMAC.

### Discussion

Resolution of the issues involved in this case requires an understanding of the procedures for wage deductions under Illinois law, which is set forth in the Illinois Code of Civil Procedure, Article XII, Part 8. Ill. Rev.Stat. ch. 110, paras. 12–801 *et seq.* (1991) (the "Illinois wage deduction law"). The process begins with a judgment credi-

---

1. GMAC asserts, without dispute, that the entire $312.87 was deducted prepetition. The timing of the deduction is critical, since the deduction of wages postpetition would violate the automatic stay. 11 U.S.C. § 362(a)(2).

tor filing with the clerk of the court an affidavit indicating that an employer currently owes or will owe wages to the debtor. Ill.Rev.Stat. ch. 110, para. 12–805. The judgment creditor also files with the clerk of the court a set of written interrogatories to be answered under oath by the employer. Ill.Rev.Stat. ch. 110, para. 12–805. Thereafter, the clerk of the court issues a summons commanding the employer to appear in court to answer the interrogatories. Ill.Rev.Stat. ch. 110, para. 12–805. The judgment creditor then causes the summons, judgment, interrogatories, and a wage deduction notice to be served on the employer. Ill.Rev.Stat. ch. 110, para. 12–806.

The service of the wage deduction summons has two effects. First, it imposes several duties on the employer:

(1) responding to the interrogatories within three to four months after the service of the summons, Ill.Rev.Stat. ch. 110, paras. 12–806 & 12–808(c);

(2) paying to the debtor whatever wages are exempt from deduction, Ill. Rev.Stat. ch. 110, para. 12–808(a); and

(3) holding, as the stakeholder, any nonexempt wages of the debtor, Ill.Rev. Stat. ch. 110, para. 12–808(b).

Second, the service of the wage deduction creates a lien in favor of the judgment creditor on any of the debtor's nonexempt wages. Ill.Rev.Stat. ch. 110, para. 12–808(b).[2]

After the employer responds to the interrogatories, and interested parties are provided with the opportunity for hearing, the circuit court enters a wage deduction order.[3] This order has several effects: it fixes the right of the employer to any setoffs against the debtor or judgment creditor, Ill.Rev.Stat. ch. 110, para. 12–809; it determines the rights of any third parties who claim an interest in the wages adverse to the interests of the judgment creditor, Ill.Rev.Stat. ch. 110, para. 12–810; it directs payment of the wages to the appropriate parties, see Ill.Rev.Stat. ch. 110, para. 12–812 (see also In re Nealis, 52 B.R. 329, 332–33 (Bankr.N.D.Ill.1985), aff'd, 1986 WL 14526 (N.D.Ill.1986)); and it discharges the employer from any claims by the debtor to the wages delivered or accounted for pursuant to the order. Ill.Rev. Stat. ch. 110, para. 12–812.

With this background, the present dispute can be addressed. The funds at issue here were deducted by the debtor's employer and impressed with a lien in favor of GMAC pursuant to a wage deduction summons procured by GMAC. However, no wage deduction order was ever entered, and the funds were never ordered paid to GMAC, due to the filing of this bankruptcy. The debtor claims the funds to be exempt from judgment, and seeks to avoid GMAC's lien pursuant to Section 522(f) of the Bankruptcy Code (the "Code," Title 11, U.S.C.).[4]

---

**2.** Two separate types of exemption are involved in this case. Exempt wages, under the Illinois wage deduction law, are the wages that an employer must pay to a debtor even though the employer has been served with a wage deduction summons. Ill.Rev.Stat. ch. 110, paras. 12–803, 12–804 & 12–808(a). Once paid to the debtor, these wages could be subject to other procedures for judgment enforcement in the absence of a general exemption from execution. The personal property exemptions provided in Part 10 of Article XII of the Illinois Code of Civil Procedure, on the other hand, exempt the listed property from judgment generally. Ill. Rev.Stat. ch. 110, para. 12–1001 et seq. (1991).

**3.** If the employer fails to appear and answer the interrogatories, the state court can enter a conditional judgment against the debtor's employer for the amount due under the judgment. Ill. Rev.Stat. ch. 110, para. 12–807. That judgment may be confirmed by the court at a subsequent hearing. Id.

**4.** Section 522(f) provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of the section, if such lien is—(1) a judicial lien....

The debtor also asks that the court order her employer to "turn over" the deducted wages to her. Recovery of money is a form of relief that is required to be sought by adversary proceeding, pursuant to Fed.R.Bankr.P. 7001(1). However, the party that would be ordered to pay over the funds, the debtor's employer, is a mere stakeholder, and has filed no objection to the matter proceeding by motion. Therefore, the lien avoidance relief—which can be sought by motion—is dispositive. Under these circumstances, if the creditor's lien is avoided, it may be appropriate for the court to direct payment

GMAC opposes this relief on three grounds, arguing (1) that the deducted wages were never property of the debtor's estate; (2) that even if the wages were property of the estate, the debtor cannot exempt them from judgment; and (3) that even if the wages can be exempted under Illinois law, the lien on those wages cannot be avoided under Section 522(f). Each of these arguments fails.

1. *The debtor has an interest in the deducted wages.*

Upon its commencement, a bankruptcy case creates an estate, which consists of all legal and equitable interests of a debtor. 11 U.S.C. § 541(a)(1) (1988). Under Illinois law a debtor has a property interest in earned wages. *Massie v. Cessna,* 239 Ill. 352, 358, 88 N.E. 152, 153–54 (1909); *see* Ill. Const. art. I, § 2 (1971). Such a property interest would be part of the debtor's estate. However, GMAC argues that the prepetition service of a wage deduction summons pursuant to the Illinois wage deduction law results in a lien that divested the debtor of all interest in whatever portion of her wages are "properly" subject to wage deduction. Since the summons was served before this case commenced, GMAC contends that the properly deducted wages never became part of the debtor's estate.

If accepted, this argument would prevent the debtor's use of section 522(f)(1) to avoid the lien for two reasons, as explained by the court in *In re Weatherspoon,* 101 B.R. 533, 537 (Bankr.N.D.Ill.1989). First, section 522(f) allows a debtor to avoid a judicial lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled." 11 U.S.C. § 522(f) (1988). An exemption is taken "from property of the estate." 11 U.S.C. § 522(b) (1988). If the withheld funds never became property of the estate, the debtor could not claim them as exempt. Since no exemption would be impaired, Section 522(f)(1) would be unavailable. Second, Section 522(f) provides for the avoidance of "the fixing of a lien on an interest of the debtor in property." Therefore, the debtor of the deducted wages to the debtor even in the

is required to have an interest in the encumbered property. An absolute transfer upon the prepetition service of the wage deduction summons would have deprived the debtor of the required interest.

GMAC's arguments were previously rejected in *Weatherspoon.* In that case, the court held that the entry of a wage deduction order, not the service of summons, deprives a debtor of his or her interest in deducted wages. *Weatherspoon,* 101 B.R. at 536–41. GMAC attempts to discount this holding by arguing that *Weatherspoon* is based on a mistaken assumption—that a judgment creditor must defend the underlying judgment before being entitled to a wage deduction order. GMAC is mistaken. The *Weatherspoon* court did not base its holding on the who must defend (or may attack) the underlying judgment at a wage deduction hearing. Rather, its holding depended on an analysis of the statute's language and operation. *Weatherspoon,* 101 B.R. at 536–41. As explained below, *Weatherspoon's* analysis remains compelling.

The issue here is one of statutory construction: when does the Illinois wage deduction law deprive an employee of all interest in deducted wages? To resolve the dispute the Court must interpret the Illinois wage deduction law. *See In re Jones,* 768 F.2d 923, 927 (7th Cir.1985) ("Whether the debtor has an interest in property, and if he does, the nature of that interest, is not defined in the [Bankruptcy Code], and requires resort to nonbankruptcy law. Generally, this means resort to state law, both to determine whether property is an asset of the debtor, and so included in the estate, and to determine the nature of the property rights in the assets of the estate."). In so doing, the Court applies the rules of statutory construction established by the Illinois Supreme Court. *See In re Barker,* 768 F.2d 191 (7th Cir.1985) (court uses intrinsic and extrinsic aids of statutory construction set forth by Illinois Su-

absence of an adversary proceeding.

preme Court in analyzing Illinois exemption statute).

In Illinois, the primary goal of statutory construction is to ascertain and effectuate the legislature's intent. *Daley v. Datacom Systems Corp.*, 146 Ill.2d 1, 14, 165 Ill.Dec. 655, 660–61, 585 N.E.2d 51, 56–57 (1991); *Kraft, Inc. v. Edgar*, 138 Ill.2d 178, 189, 149 Ill.Dec. 286, 291, 561 N.E.2d 656, 661 (1990). To find that intent, the court starts with the statute's language. *Barker*, 768 F.2d at 194 ("In construing a statute, a court should first examine the statutory language itself."); *In re Marriage of Logston*, 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 637, 469 N.E.2d 167, 171 (1984). However, the disputed text is only the starting point. In arriving at the meaning of statutory language, the court can consider a number of canons of construction, several of which are pertinent here:

(1) a presumption that words are used with their ordinary meaning, *Daley*, 146 Ill.2d at 15, 165 Ill.Dec. at 661, 585 N.E.2d at 57; *People v. Hicks*, 101 Ill.2d 366, 371, 78 Ill.Dec. 354, 356, 462 N.E.2d 473, 475 (1984); *People v. Dednam*, 55 Ill.2d 565, 568, 304 N.E.2d 627, 629 (1973);

(2) consideration of the entire statute, *Castaneda v. Illinois Human Rights Commission*, 132 Ill.2d 304, 318, 138 Ill. Dec. 270, 276–77, 547 N.E.2d 437, 443–44 (1989); *accord Antunes v. Sookhakitch*, 146 Ill.2d 477, 484, 167 Ill.Dec. 981, 984, 588 N.E.2d 1111, 1114 (1992); *Daley*, 146 Ill.2d at 14, 165 Ill.Dec. at 660–61, 585 N.E.2d at 56–57; *Kraft*, 138 Ill.2d at 189, 561 N.E.2d at 661;

(3) a presumption against absurdity, *Antunes*, 146 Ill.2d at 486, 167 Ill.Dec. at 985, 588 N.E.2d at 1115 ("Statutes should be construed as to give them a reasonable meaning and in the most beneficial way to prevent absurdity or hardship."); *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill.2d 263, 273, 586 N.E.2d 1211, 1216 (1992) ("We will not make any determination that will construe an act of the legislature to so as to lead to absurd, inconvenient or unjust consequences.");

(4) strict construction of statutes in derogation of the common law, *Barthel v. Illinois Central Gulf R. Co.*, 74 Ill.2d 213, 220–21, 23 Ill.Dec. 529, 533, 384 N.E.2d 323, 327 (1978); and

(5) liberal construction of exemption statutes, *Barker*, 768 F.2d at 196 (citing Illinois Supreme Court cases).

If the statute's language is unambiguous, the court may not resort to extrinsic aids in construing the statutory language and must enforce a constitutionally valid statute as enacted. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill.2d 143, 151, 92 Ill.Dec. 833, 836, 485 N.E.2d 1076, 1079 (1985) ("Where [the statute's] language is unambiguous, a court must enforce the law as enacted without considering other aids."); *Logston*, 103 Ill.2d at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171.

With these rules of statutory construction in mind, the Court can now address GMAC's interpretation of the Illinois wage deduction law. Turning first to the statutory language, it is clear that the Illinois wage deduction law never states that the service of a summons deprives an employee of ownership of deducted wages. Rather, it states that service of the summons imposes a lien on the debtor's nonexempt wages. Ill.Rev.Stat. ch. 110, para. 12–808(b). The term "lien" is not defined in the Illinois wage deduction law, but it is generally understood to be a "[q]ualified right ... which a creditor has in or over specific property of his debtor, as security for the debt." Black's Law Dictionary 922 (6th ed. 1990)[5]; cf. Section 101(37) of the Bankruptcy Code, which defines lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." Thus, the ordinary meaning of the word "lien" used by the

---

**5.** The Illinois Supreme Court has validated the use of dictionaries, including Black's Law Dictionary, to ascertain the generally understood meaning of words. *See, e.g., Daley*, 146 Ill.2d at 15–16, 165 Ill.Dec. at 661–62, 585 N.E.2d at 57–58 (After it observed that "[t]o ascertain the ordinary and popular meaning of words, this court has in the past used the dictionary as a resource," the Illinois Supreme Court employed Black's Law Dictionary to determine the generally understood meaning of various terms).

Illinois General Assembly indicates that a debtor does not lose all interest in wages upon the service of a wage deduction summons.

Next, considering the wage deduction law as a whole, GMAC's view of the wage deduction lien creates irreconcilable conflicts with other provisions of that law. The wage deduction law establishes a priority scheme for liens. Under that scheme, liens for support of the debtor's spouse and children have priority over any prior or subsequent wage deduction lien. Ill.Rev. Stat. ch. 110, para. 12–808. Yet if GMAC's reading of the statute were correct, once a wage deduction summons was served, the debtor's interest in the wages would be eliminated, and there would be no interest of the debtor to which support claims could attach.

Similarly, GMAC's argument conflicts with setoff rights of the debtor's employer. Under the wage deduction law, the debtor's employer may assert against the wages due to the debtor any offsetting claims it has against the debtor. Ill.Rev.Stat. ch. 110, para. 12–809. If GMAC were correct, once a wage deduction summons was served, the debtor's interest in the wages would be eliminated, and there would be no interest of the debtor against which the debtor's employer could assert its setoff rights.

Furthermore, GMAC's reading of the statute—that the debtor has no interest in "properly" deducted wages—creates an administrative absurdity. Until there has been an opportunity for the debtor (and other creditors) to be heard, there can be no certainty as to what part of the debtor's wages were "properly" withheld. The debtor has the right to terminate the wage deduction lien, and recover deducted wages, to the extent that the underlying judgment is modified or vacated. Ill.Rev. Stat. ch. 110, para. 12–808(b). The debtor can challenge a wage deduction if it infringes on exempt wages. Ill.Rev.Stat. ch. 110, paras. 12–803 to 12–805 & 12–811. The debtor's creditors, other than the judgment creditor who instituted the wage deduction proceeding, may assert claims to the deducted wages. Ill.Rev.Stat. ch. 110, paras. 12–808 to 12–811. Those claims may have priority over the ones of the judgment creditor instituting the wage deduction proceedings. Ill.Rev.Stat. ch. 110, paras. 12–808 to 12–810. Because the "propriety" of a deduction cannot be determined prior to a court hearing, GMAC's reading cannot be accepted.

Finally, GMAC's interpretation—that the wage deduction lien divests the debtor of all interest in the withheld wages—violates the principle of strict construction. The Illinois wage deduction law creates an action in garnishment, a statutory proceeding unknown to the common law. *First Finance Co. v. Pellum,* 62 Ill.2d 86, 91, 338 N.E.2d 876, 879 (1975); *Freeport Motor Casualty Co. v. Madden,* 354 Ill. 486, 489, 188 N.E. 415, 416–17 (1933). Accordingly, the Illinois wage deduction law is strictly construed. *Madden,* 354 Ill. at 489, 188 N.E. at 417. As part of that law, debtors are deprived of their right to be paid wages only after an opportunity to be heard in a state court. Ill.Rev.Stat. ch. 110, paras. 12–809–12–811. GMAC's interpretation would divest debtors (and perhaps others) of their interest in deducted wages without a hearing. Such a reading does not strictly construe the Illinois wage deduction law and, therefore, must be rejected.

In sum, as *Weatherspoon* held, it is the entry of the wage deduction order, not the creation of the lien, that eliminates any interest of the debtor in the deducted wages. *See* Ill.Rev.Stat. ch. 110, para. 12–812. Here, no wage deduction order was ever entered. Accordingly, when this case began, the debtor had a property interest in the wages, and that interest became property of the debtor's estate pursuant to Section 541 of the Code.

### 2. *The debtor may exempt the deducted wages.*

█ Section 522 of the Bankruptcy Code permits a debtor the right to exempt certain property from the estate. Pursuant to Section 522(b), the State of Illinois has opted to require debtors in this state to employ the exemptions provided by Illinois

law. *In re Sullivan,* 680 F.2d 1131, 1132–38 (7th Cir.), *cert. denied,* 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982); *In re Peacock,* 119 B.R. 605, 607 (Bankr.N.D.Ill. 1990), *aff'd,* 125 B.R. 526 (N.D.Ill.1991); Ill.Rev.Stat. ch. 110, para. 12–1201 (1991). GMAC's second argument is that Illinois law does not permit the exemption claimed by the debtor here—a "wildcard" exemption in any personal property—to be applied to wages withheld under a wage deduction summons.

Again, to determine this issue requires an understanding of the relevant statutory scheme. The Illinois law relevant here is another part (Part 10) of Article XII of the Illinois Code of Civil Procedure. Ill.Rev. Stat. ch. 110, paras. 12–1001 *et seq.* (1991) (the "Illinois personal property exemption law"). Paragraph 12–1001(b) of that law establishes the wildcard exemption, granting to each debtor the right to exempt "[t]he debtor's equity interest, not to exceed $2000, in any other [personal] property." However, the final sentence of Paragraph 12–1001 prohibits the application of any Illinois personal property exemption to "any wages due or to become due to the debtor that were required to be withheld and *upon which a wage deduction order has been entered* under [the Illinois wage deduction law]" (emphasis added). GMAC argues that this prohibition applies to all wages deducted pursuant to a wage deduction summons, regardless of the entry of a wage deduction order. The debtor, in contrast, reads the language of the prohibition, with emphasis on the italicized phrase, to apply only in situations where a wage deduction order has been entered.

To resolve this dispute, the Court must interpret the Illinois personal property exemption law pursuant to the previously discussed rules of construction. Under these canons of construction, GMAC's interpretation again cannot stand. The language of the final paragraph of the Illinois personal property exemption law is plain. The debtor is prohibited from claiming an exemption on deducted wages "upon which a wage deduction order has been entered." The only possible interpretation of this phrase is to limit the application of the exemption

prohibition to a wage deduction that has been confirmed by a court order. GMAC contends that this statutory language somehow reflects a mistake, and that the Illinois legislature really intended to prohibit exemption of any deducted wages. However, it is not the office of a court to ignore clear statutory language because it is arguably inconsistent with an ambiguous legislative history. *Graham, Anderson, Probst & White, Inc.,* 109 Ill.2d at 151, 92 Ill.Dec. at 836, 485 N.E.2d at 1079; *Logston,* 103 Ill.2d at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171.

Furthermore, it is far from clear that the limiting language is not precisely what the legislature intended. Prior to the entry of a wage deduction order there is no assurance that wages have been properly deducted. The legislature may well have intended to prohibit a debtor from claiming deducted wages as exempt only after a court has determined that the underlying judgment is valid and has not been satisfied, and that no amounts in excess of those authorized by law were withheld. Under GMAC's reading, the debtor would apparently be prohibited from claiming as exempt under the personal property exemption law even wages that were improperly deducted. Again, however, the issue is not whether the statutory language reflects its legislative history. The only question is whether the statute's language is ambiguous. It is not.

Finally, even if the language in the last paragraph of the Illinois personal property exemption law were ambiguous, the intrinsic aid of liberally construing exemption statutes in favor of debtors would resolve the ambiguity. *See Barker,* 768 F.2d at 196 ("[W]here an exemption statute might be interpreted favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor.").

Because no wage deduction order was entered in the state court proceedings, the debtor may employ her exemption under Ill.Rev.Stat. ch. 110, 12–1001(b) to exempt the withheld wages.

3. *The debtor may avoid the fixing of the lien on her deducted wages.*

 In addition to granting exemption rights, Section 522 of the Bankruptcy Code permits a debtor to avoid the "fixing of a lien on an interest of the debtor in property to the extent the lien impairs an exemption" which the debtor may elect. 11 U.S.C. § 522(f) (1988). Unlike the issues relating to the existence of the debtor's exemption, which are governed here by Illinois law, questions of impairment and lien avoidance are governed by federal law. *In re Herman,* 120 B.R. 127, 129 (9th Cir.BAP 1990). GMAC asserts that the lien cannot be avoided in light of the Supreme Court's decision in *Farrey v. Sanderfoot,* — U.S. —, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

 In *Sanderfoot,* the Supreme Court dealt with the unique circumstances of a divorce decree that simultaneously divested the debtor's spouse of her joint tenancy interest in the marital homestead and transferred that homestead to the debtor, subject to a lien in favor of the spouse. The crux of the *Sanderfoot* decision was that the debtor never had an unencumbered interest in the his former spouse's joint tenancy interest or the marital homestead, both of which were transferred to the debtor in connection with the divorce decree. *Sanderfoot,* — U.S. at —, 111 S.Ct. at 1828–31. Because the debtor never had an unencumbered right to the property on which the lien was "fixed," the court ruled that the debtor could not avoid the "fixing" of a lien under Section 522(f).

Here, in contrast to *Sanderfoot,* the debtor's wages were never jointly owned by the debtor and GMAC. Rather, as discussed above, GMAC could obtain ownership of the wages only after entry of a state court order. Thus, the factual situation is completely dissimilar from the one that gave rise to *Sanderfoot.* More importantly, the debtor acquired a right to be paid by performing services for her employer, not by virtue of a court order that simultaneously imposed a lien; GMAC's lien could become fixed only after the debtor performed those services. Accordingly, *Sanderfoot* has no application here, and the debtor may avoid the fixing of the lien arising from the wage deduction summons pursuant to Section 522(f).

Conclusion

For the reasons stated above, the Court grants the debtor's motion. A separate order will be entered in conformity with this opinion.