**In re Julius FRANKLIN, Pamela B. Brown, and Sandra Ramirez, Debtors.**

**Bankruptcy Nos. 97 B 03757, 97 B 05382 and 97 B 04044.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 29, 1997.

J.K. Benjamin & Assoc., Chicago, IL, for debtors in Nos. 97 B 3757, 97 B 5382.

Feld & Korrub, Chicago, IL, for debtor in No. 97 B 4044.

Leonard Becker, Chicago, IL, for Diagnostic Scanning Lab. in No. 97 B 3757.

Blitt & Gaines, Chicago, IL, for First Nat. Bank in No. 97 B 5382.

Blatt, Hasenmiller, Chicago, IL, for Carson Pirie Scott in No. 97 B 4044.

### MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

Three Chapter 7 cases are now before the court on the debtors' motions to avoid liens on wages deducted pursuant to an Illinois collection law. The motions are all grounded

in § 522(f) of the Bankruptcy Code (Title 11, U.S.C.). Because of a recent change in Illinois law regarding the exemptibility of such wages, the court questioned whether § 522(f) remained applicable, and provided the debtors an opportunity to brief the question. Having considered the briefs submitted by the debtors, the court concludes that, given the change in Illinois law, relief under § 522(f) is no longer available in the situation presented here.

### Jurisdiction

The pending motions are specifically authorized by § 522(f) of the Bankruptcy Code, and are therefore proceedings "arising under title 11," as set forth in 28 U.S.C. § 1334(b). The district court has jurisdiction over such proceedings, and may refer them to bankruptcy judges, pursuant to 28 U.S.C. § 157(a). By General Rule 2.33(a), the District Court for the Northern District of Illinois has made such a reference. Bankruptcy judges have authority to enter appropriate orders in "core proceedings" arising in bankruptcy cases. 28 U.S.C. § 157(b)(1). The pending motions are core proceedings. 28 U.S.C. § 157(b)(2)(K).

### Findings of Fact

In all three cases now before the court, the asserted facts are uncontested and essentially the same. The creditors in each case obtained judgments against the debtors prior to the filing of the bankruptcy cases. The creditors then attempted to collect on their judgments by instituting wage deduction proceedings under Illinois law, causing wage deduction summonses to be served on the debtors' employers. These summonses required the employers to withhold a portion of the debtors' wages. In each case, the debtors filed petitions under Chapter 7 of the Bankruptcy Code before the return date of the wage deduction summonses, and the debtors' employers are still holding the wages that they deducted pursuant to the summonses. During their Chapter 7 cases, the debtors brought motions to avoid the lien on these wages created by the wage deduction proceedings.

### Conclusions of Law

*The treatment of uncontested motions.* None of the motions now before the court drew any response from the affected creditors, perhaps because the creditors believed that the amounts at issue were insufficient to merit the cost of a court appearance. In any event, the motions are uncontested, and the first issue before the court is the standard for granting an uncontested motion.

Although few reported decisions have addressed this issue, the relevant authorities indicate (1) that a bankruptcy court may review the merits of an uncontested motion prior to granting relief, and (2) that the motion should be denied if there are not good grounds for the relief sought. One decision, dealing with a motion to avoid lien, states this rule directly: "The granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion." *Nunez v. Nunez (In re Nunez),* 196 B.R. 150, 156–57 (9th Cir.BAP 1996). Furthermore, it appears that Fed.R.Bankr.P. 9013, which provides that a "motion shall state with particularity the grounds therefor," was intended to give the court "enough information to process the motion correctly." *See In re Aucoin,* 150 B.R. 644, 647 (E.D.La. 1993) (discussing the origin and purpose of the rule).

Critical review of uncontested motions, moreover, is consistent with a basic legal principle—that courts are not required to grant a request for relief simply because the request is unopposed. Other applications of this principle, in the bankruptcy context, include the rule that bankruptcy courts should review uncontested fee applications, that bankruptcy courts may deny default judgments against nonappearing defendants, and that appellate tribunals may deny bankruptcy appeals even though no appellee participates. *In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 840–45 (3d Cir.1994) (uncontested fee application reduced); *AT & T Universal Card Services, Corp. v. Sziel (In re Sziel),* 206 B.R. 490, 492–93 (Bankr. N.D.Ill.1997) (default judgment denied as to dischargeability complaint); *Cossio v. Cate (In re Cossio),* 163 B.R. 150, 154 (9th Cir. BAP 1994), *aff'd,* 56 F.3d 70 (9th Cir.1995) (judgment affirmed in uncontested appeal). In a decision dealing with an uncontested fee

application, *In re Evans,* 153 B.R. 960, 968 (Bankr.E.D.Pa.1993), the court made a point reflecting the rationale in all of these decisions: "The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law." *Id.* at 968.

Accordingly, this court has decided to review the pending uncontested motions to determine whether they set forth good grounds for the relief sought.

■ *The requirements for lien avoidance under § 522(f)(1)(A).* Each of the motions now before the court seeks avoidance of a lien under § 522(f)(1)(A) of the Bankruptcy Code. Section 522(f)(1)(A) permits the debtor to avoid a lien if four requirements are satisfied:

> (1) the lien the debtor seeks to avoid is a judicial lien; (2) the debtor claims an exemption in the property to which the debtor is entitled under § 522(b); (3) the creditor's lien impairs the debtor's exemption; and (4) the debtor has an interest in the property.

*Johnson v. Ford Motor Credit Co. (In re Johnson),* 53 B.R. 919, 922 (Bankr.N.D.Ill. 1985).

■ There is no question that the first and fourth of these requirements are met by the pending motions. The Illinois wage deduction process plainly imposes a "judicial lien" on wages of the debtor. That process begins with a judgment creditor filing with the clerk of the court (1) an affidavit indicating that an employer currently owes or will owe wages to the debtor, and (2) a set of written interrogatories to be answered by the employer. 735 ILCS 5/12–805. In turn, the clerk of the court issues a summons commanding the employer to appear in court to answer the interrogatories. *Id.* The judgment creditor then causes the summons, judgment, interrogatories, and a wage deduction notice to be served on the employer. 735 ILCS 5/12–806. Service of these documents both requires the employer to begin deducting a portion of the debtor's wages and creates a lien on the deducted wages in favor of the judgment creditor. 735 ILCS 5/12–808(b). This lien is precisely the sort defined by § 101(36) of the Bankruptcy Code as a "judicial lien"—a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *In re Johnson,* 53 B.R. at 922.

Similarly, the debtors in these cases plainly retained an interest in their wages as of the time of the bankruptcy filings. Had the bankruptcies not intervened, imposing an automatic stay on the wage deduction proceedings, there would have been the opportunity for a hearing in state court, after which that court would have issued an order determining the rights of parties claiming an interest in the wages deducted by the employer. 735 ILCS 5/12–811, 812; *see In re Bates,* 148 B.R. 541, 543 (Bankr.N.D.Ill.), *aff'd,* 161 B.R. 965 (N.D.Ill.1993) (discussing the wage deduction process). However, until such an order is entered, the debtor retains an interest in the deducted wages, subject to the creditor's lien. *Bates,* 148 B.R. at 544–46; *In re Weatherspoon,* 101 B.R. 533, 536–41 (Bankr.N.D.Ill.1989).

Rather, the question raised by the pending motions is as to the third requirement for lien avoidance under § 522(f)(1)(A)—whether the debtor is entitled to claim the property exempt under § 522(b). Because, as discussed below, the debtors here are not entitled to claim such an exemption, it is unnecessary to consider whether the creditors' lien would impair the exemption, the final requirement for lien avoidance under § 522(f)(1)(A).

■ *Exemption under § 522(b).* Section 522(f)(1) of the Bankruptcy Code allows a debtor to avoid a lien only "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section...." 11 U.S.C. § 522(f)(1) (1994). Would the debtors have been entitled to claim their deducted wages exempt under § 522(b)? That question ultimately turns on the application of Illinois law, because, as allowed by § 522(b), the State of Illinois has chosen to require debtors in this state to employ the exemptions provided by Illinois law. *In re Sullivan,* 680 F.2d 1131, 1132–38 (7th Cir.), *cert. denied,* 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982); *In re Peacock,* 119 B.R. 605, 607

(Bankr.N.D.Ill.1990), *aff'd*, 125 B.R. 526 (N.D.Ill.1991); 735 ILCS 5/12–1201.

 The law on which the debtors make their claim of an exemption is Part 10 of Article XII of the Illinois Code of Civil Procedure. 735 ILCS 5/12–1001 et seq. (the "Illinois personal property exemption law"). Section 12–1001(b) of that law establishes the wildcard exemption, granting to each debtor the right to exempt "[t]he debtor's equity interest, not to exceed $2,000 in value, in any other [personal] property." However, the debtors' claim of wildcard exemptions is called into question by the final sentence of § 12–1001. As modified by Article 10 of P.A. 89–686, which became effective December 31, 1996, this sentence prohibits the application of any Illinois personal property exemption to "any wages due or to become due to the debtor that are required to be withheld in a wage deduction proceeding under [the Illinois wage deduction law]." 735 ILCS 5/12–1001.

Two of the debtors whose motions are now before the court, Julius Franklin and Pamela Brown, argue—based on legislative history—that the new exemption limitation should be read to affect only wage deduction proceedings themselves, and not lien avoidance in bankruptcy. This distinction is not possible. Legislation in Illinois is subject to the usual rule that unambiguous statutory language must be given effect. *In re Barker*, 768 F.2d 191, 194 (7th Cir.1985) ("In construing a statute, a court should first examine the statutory language itself."); *In re Marriage of Logston*, 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 637, 469 N.E.2d 167, 171 (1984). If the statute's language in unambiguous, the court may not resort to extrinsic aids in construing the statutory language. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill.2d 143, 151, 92 Ill.Dec. 833, 836, 485 N.E.2d 1076, 1079 (1985); *Logston*, 103 Ill.2d at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171. In particular, a court should not ignore clear statutory language because it is arguably inconsistent with legislative history. *Graham, Anderson, Probst & White, Inc.*, 109 Ill.2d at 151, 92 Ill.Dec. at 836, 485 N.E.2d at 1079; *Logston*, 103 Ill.2d at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171. The language of the final sentence of the Illinois personal property exemption law, as amended, is entirely unambiguous. A debtor is prohibited from claiming an exemption on wages "that are required to be withheld in a wage deduction proceeding." The only reasonable interpretation of this language is that deducted wages are not subject to Illinois personal property exemptions; the language governs the type of property that may be claimed exempt, not the type of proceeding in which the exemption may be claimed. There is no need to look to the legislative history of the amended prohibition for guidance.

*Exemption under § 522(l).* Although the debtors may not exempt their deducted wages under § 522(b), the wages deducted in these cases have nevertheless been exempted, pursuant to § 522(*l*). That subsection requires a debtor to file a list of property claimed as exempt and provides that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*) (1994). Fed.R.Bankr.P. 4003(b) gives parties in interest 30 days from the conclusion of the § 341 meeting to file objections to a claim of exemption. In the present cases, this date has passed, and no party has filed any objection to exemptions. Accordingly, the deducted wages, claimed as exempt by the debtors, are exempted by default. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992) (if no party in interest timely objects to an exemption, even if that exemption is baseless, the property at issue is exempt). On this basis, one of the debtors now before the court, Sandra Ramirez, argues that her wages are subject to the lien avoidance under § 522(f)(1)(A), regardless of the change in the Illinois exemption law.

 This argument, however, ignores the actual requirement of § 522(f)(1)(A). As noted above, that provision allows lien avoidance not to the extent that *any* exemption would be impaired, but only "an exemption to which the debtor would have been entitled under subsection (b)." 11 U.S.C. § 522(f)(1) (1994). Thus, whether an exemption arises by default under § 522(*l*) is not dispositive; the debtor must show a substantive entitlement to exemption under § 522(b). As the

*Taylor* decision emphasized, a debtor may acquire an exemption by default under § 522(*l*) even though the debtor emphatically would not have been entitled to the exemption under § 522(b). The requirement of § 522(f)(1)(A) is thus not simply that the property be exempt, but that it be substantively exemptible.

A majority of the decisions considering the issue have held that § 522(f)(1)(A) does require substantive exemptibility. *Morgan v. FDIC (In re Morgan),* 149 B.R. 147, 151 (9th Cir.BAP 1993) ("That the debtor is entitled to the exemption by virtue of § 522(*l*) does not mean that the debtor 'would have been entitled' to the exemption under § 522(b)...."); *In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992), *aff'd,* 24 F.3d 247 (9th Cir.1994) ("This language is not ambiguous and does not permit a lien to be avoided unless there is entitlement to exemption under section 522(b). It matters not at all that the property may be exempt by virtue of section 522(*l*)."); *In re Montgomery,* 80 B.R. 385, 389 (Bankr.W.D.Tex.1987) ("It is to Section 522(b), not to Section 522(*l*), that the court's attention must be directed in Section 522(f) actions.").

Moreover, this interpretation would be required, even if § 522(f)(1) were ambiguous, in order to avoid serious constitutional questions. *See International Assn. of Machinists v. Street,* 367 U.S. 740, 749, 81 S.Ct. 1784, 1790, 6 L.Ed.2d 1141 (1961) ("Federal statutes are to be so construed as to avoid serious doubt of their constitutionality."). Although creditors are given notice of the deadline to file objections to exemptions claimed by the debtor, they are not informed of what property the debtor actually claims as exempt (this could only be found by searching the bankruptcy files), and secured creditors are given no notice that failure to object to a claim of exemption on liened property may result in loss of the lien. Yet it is a general requirement of constitutional due process that a lienholder be given actual notice of any proceeding in which its lien may be lost. *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983) ("[A] mortgagee clearly has a legally protected property inter-

est," and so is "entitled to notice reasonably calculated to apprise him" of a proceeding that would have the effect of voiding that interest.). Even if a lienholder has general knowledge that lien avoidance is possible, the lienholder is still entitled to notice of the particular proceeding that may result in loss of the lien. *See id.* at 799, 103 S.Ct. at 2712 ("Personal service or mailed notice is required even though sophisticated creditors have means at their disposal means to discover ... whether [lien avoiding] proceedings are ... likely to be initiated."). It is highly doubtful whether this notice requirement is satisfied by a procedure in which secured creditors are notified of a lien avoidance proceeding under § 522(f)(1)(A) only after it is too late for them to object to the exemptibility of the liened property.

A number of decisions have recognized this due process concern. "Allowing the debtor to rely upon the exemption-by-default of § 522(*l*) to avoid a secured creditor's lien would amount to a procedural ambush not sanctioned by the Constitution." *Morgan,* 149 B.R. at 152. *See also In re Smith,* 119 B.R. 757, 760 (Bankr.E.D.Cal.1990) ("At a minimum, due process should require that the lien creditor receive notice (rather than be required to search for it) that the liened property is claimed as exempt before the time to object has expired."); *In re Frazier,* 104 B.R. 255, 259 (Bankr.N.D.Cal.1989) (raising similar due process questions).

Additional due process concerns were expressed in *In re Maylin,* 155 B.R. 605 (Bankr.D.Me.1993). The *Maylin* court noted the usual rule that liens pass through bankruptcy unaffected, unless the secured creditor is given notice and a hearing respecting the validity of its lien, so that secured creditors may ignore bankruptcy proceedings. *Maylin,* 155 B.R. at 611. *See In re Montgomery,* 80 B.R. 385, 391 (Bankr.W.D.Tex. 1987) (it is not necessary for a secured creditor to object to a debtor's claimed exemption or to file a proof of claim to preserve its lien). The *Maylin* court suggested that secured creditors would be unconstitutionally deprived of property rights if they were not entitled to contest the debtor's exemption in a lien avoidance action after choosing not to

participate in earlier bankruptcy proceedings. *Id.* at 612, 613 n. 28.

All of these due process questions are eliminated by interpreting § 522(f)(1)(A), according to its terms, to require substantive exemptibility, thus allowing creditors to raise objections to exemptibility at the hearing on lien avoidance.

There are decisions apparently holding that liens should be avoided under § 522(f) as to any property exempted by default under § 522(*l*). These decisions generally hold that creditors are precluded from objecting to the debtor's claimed exemptions in a § 522(f) proceeding if they did not raise the objection within the time limit established by Rule 4003, as interpreted by the Supreme Court in *Taylor*. *See Caruthers v. Fleet Finance, Inc. (In re Caruthers)*, 87 B.R. 723, 726 (Bankr.N.D.Ga.1988); *In re Towns*, 74 B.R. 563, 567 (Bankr.S.D.Iowa 1987) (compliance with Rule 4003(b) is necessary for efficient case administration and "[p]ermitting a creditor who fails to object timely to exemption claims to make that objection in resistance to a section 522(f) motion renders [the rule] meaningless."); *In re Hahn*, 60 B.R. 69, 76 (Bankr.D.Minn.1986). Indeed, one district court opinion from the Northern District of Illinois affirmed a bankruptcy court decision that relied on *Taylor* to preclude a creditor's objection to a lien avoidance motion. *Great Southern Co. v. Allard*, 202 B.R. 938, 941 (N.D.Ill.1996):

> [Creditor] may not at this stage challenge the status of [debtor's] property as exempt pursuant to Rule 4003(b), which allows ... 30 days from the conclusion of the creditors' meeting in which to object to the exemption. Strict adherence to that deadline is mandated both by the literal language of Section 522(*l*) ... and by the definitive construction of that language in *Taylor* ....

The difficulty with all of these decisions—apart from the issues of statutory construction and due process noted above—is that they fail to recognize the distinction between exemption and lien avoidance. Exemption only has the effect of removing property from the debtor's estate. Thus, property that is exempt will not be administered for the benefit of creditors. *See Marine Midland Bank v. Scarpino*, 113 F.3d 338, 339–40 (2d Cir.1997) (discussing effect of exemption). Lien avoidance, on the other hand, has the effect of removing a property right held by a party other than the debtor, and does not occur automatically with exemption. *Id.* at 340–41. Thus, property may be exempt, but still be subject to a lien, as frequently occurs when exempted homestead property is subject to mortgage liens. By failing to object to an exemption, then, a lienholder merely assents to the release of identified property from the claims of the estate, not to the surrender of its lien on that property. Particularly in no asset cases, where creditors receive notice that there is unlikely to be a distribution to creditors in any event, it is hardly surprising that a lienholding creditor would forego the expense of objecting to an exemption claim. On the other hand, when a motion to avoid lien is presented, the affected creditor, and the court, are entitled to inquire whether all of the requirements for lien avoidance have been met. For lien avoidance under § 522(f)(1)(A), those requirements include, as noted above, a substantive entitlement to an exemption under § 522(b). For a creditor or the court to insist on this requirement does not render meaningless the provisions for exemption by default. Even though the property in question may not be subject to lien avoidance, it can still be exempt from claims of the estate. That is the situation in each of the cases now before the court.

### Conclusion

For the reasons stated above, this court holds that Illinois debtors cannot avoid the judgment creditors' liens in deducted wages under § 522(f)(1)(A). Separate orders will therefore be entered denying the pending motions.