In re **MARKET RESOURCES DEVELOPMENT CORP.,** Debtor.

No. 02–84844–RGM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Dec. 10, 2004.

Thomas P. Gorman, Alexandria, VA, for Debtor.

### *MEMORANDUM OPINION*

ROBERT G. MAYER, Bankruptcy Judge.

This case is before the court on the chapter 7 trustee's final report. The only question raised by the report is the proper compensation for the trustee.[1] The trustee requests compensation of $7,743.26 for trustee's fees and reimbursement of $37.80 for expenses. He states that he "voluntarily reduced his compensation from $18,140.06 to $7,743.26, not including expenses." Trustee's Final Report and Proposed Distribution to Creditors, p. 3 n. 1. (Docket Entry 59). The $18,140.06 amount is the maximum compensation allowed under 11 U.S.C. § 326(a) for distributions to parties in interest of $297,801.29.

The court raised the question of the basis for the § 326(a) computation: Why is it $297,801.29 rather than $15,041.41? The trustee distributed $282,745.21 to Temesgen Mehari Bitew and $17.01 for the premium on the trustee's bond. He has $15,041.41 on hand to distribute[2] of which

---

1. Other professional fees requested were $5,000.00 for Ridberg Sherbill & Aronson LLP, the trustee's attorney, for fees (voluntarily reduced from $7,682.25) and $160.35 for expenses and $600.00 for Thompson, Greenspon & Co., P.C., the trustee's accountant (voluntarily reduced from $774.25).

2. The math would suggest that the trustee had $15,039.07 on hand. However, the trustee

received $2.34 on August 31, 2004, as interest. *See* Trustee's Final Report, Form 2 (Cash Receipts and Disbursements Record). The trustee's Summary of Account as of October 21, 2004, shows receipts of $297,801.29 which does not include the interest receipt. The actual receipts that should have been shown on the Summary of Account is $297,803.63.

$1,500.00 is proposed to be distributed to the sole unsecured creditor and the rest to professionals. The distribution to Mr. Bitew was for the sales price of property owned by Bitew and encumbered by a deed of trust in favor of the debtor, a deed of trust that Bitew asserted was fraudulent.

### Background

This case is essentially a family dispute. All parties agree that Bitew, an Ethiopian citizen, owned two houses on Lillie Mae Way in Annandale, Virginia. Bitew asserts that when he went to Ethiopia on business he gave his son a power of attorney authorizing him to refinance the existing trusts encumbering the properties. All net proceeds were to be deposited at Bitew's direction. Instead, his son placed a second deed of trust on the properties purportedly to secure a note in the amount of $355,500.00 in favor of the debtor, a corporation owned by three of Bitew's children, including the son holding the power of attorney.[3] Bitew did not receive any of the proceeds from the second trust. He discovered the trust after he signed a contract to sell one of the properties and was unable to go to settlement. The son and the debtor deny all allegations of fraud.

The parties, Bitew asserts, agreed to permit the sale to close with the disputed proceeds being escrowed pending a determination of the validity of the deed of trust. The son, allegedly, changed his mind and refused to allow the closing to go forward without the debtor being paid in full. Bitew filed suit in the United States District Court for the Eastern District of Virginia seeking to adjudicate the validity of the deed of trust and to permit the sale subject to the proceeds being held in escrow. Bitew moved to strike the debtor's answer in the civil action. On September 26, 2002, the day before the hearing on the motion, the debtor filed this chapter 7 bankruptcy case.

Bitew sought relief from the automatic stay to permit the District Court suit to proceed (Docket Entry 8) and for authority to sell the property free and clear of liens under 11 U.S.C. § 105 with the proceeds to be held in escrow. Both the debtor and the trustee consented to the sale of the property with the disputed proceeds to be placed in escrow. (Docket Entries 22 and 24). The order granting the motion provided that the disputed amounts were "to be held in trust pending a determination of entitlement thereto." Order entered on October 22, 2002. (Docket Entry 28). The sale was consummated. The settlement agent paid the costs of sale and the first deed of trust and delivered to the trustee $297,463.10 as required by the order.

Bitew filed a complaint in this court on January 21, 2003, Adversary Proceeding 03–1032, seeking a determination of the validity of the questioned deed of trust. The trustee filed an answer and further investigated the allegations. On June 24, 2003, the trustee filed a motion to approve a settlement. (Docket Entry 48). The settlement was to pay Bitew all of the funds held by the trustee except $15,000 which would be retained by the estate and for the parties to execute releases. Motion for Approval of Settlement Agreement. (Docket Entry 48). In his memorandum in support of his motion, the trustee stated that the factual issues were in conflict but that Bitew would receive 95% of the distribution of any funds as a creditor, if the lien were valid. If

---

**3.** The three children own 49% of the debtor. A fourth individual is the owner of the remaining 51% of the debtor. *See* Statement of Financial Affairs, Question 21b. (Docket Entry 18). The sole creditor, Bilen Estephanos, is the treasurer, but not an owner.

the lien were invalid, Bitew would receive all of the proceeds.[4] The day before the trustee filed his motion seeking approval of the settlement, he requested a notice be mailed to all creditor to file proofs of claims. (Docket Entry 47). The bar date for filing proofs of claims was set at October 2, 2003. (Docket Entry 51). The settlement was approved by the court on July 22, 2003, nine weeks before the expiration of the bar date. (Docket Entries 52 and 54).

At the time that the settlement was made, Bitew had filed the only two proofs of claims in the case. Each asserted claims of $2,000,000. Four creditors were scheduled, including Bitew. The total amount scheduled was $8,449.50 which did not include Bitew who was listed with the amount as "unknown." Bilen Estephanos who was not scheduled as a creditor filed two proofs of claims, an unsecured claim on October 3, 2003, and a secured claim on October 8, 2003. (Proofs of Claims 3 and 4).[5] Had Estephanos not filed her proof of claim, all of the funds would have gone to professional fees.

Estephanos objected to the trustee's final report, apparently believing that her claim was not to be paid. In fact, her claim is the only allowed claim to be paid, albeit not in its entirety. No one else objected to the final report or any of the fee applications.

*Computation of Trustee's Compensation*

■ The absence of an objection "does not absolve the court of its responsibility to ensure that relief may be properly entered." *In re Lancaster*, 2003 WL 109205 (Bankr.D.Idaho 2003). The court must review each fee application and determine its merits even though the application is without opposition. In *In re Great Sweats, Inc.*, 113 B.R. 240, 242 (Bankr. E.D.Va.1990), Judge Shelley observed that "The Court's responsibility in awarding fees is great, as each creditor individually has little reason to object to requested compensation due to the costs incidental to the objection which it would incur compared to the possible amount of recovery from the estate. The Office of the U.S. Trustee, understaffed as it is, offers some solace ... but the ultimate responsibility lies with the Court." *See also In re Franklin*, 210 B.R. 560, 562 (Bankr. N.D.Ill.1997) ("Critical review of uncontested motions, moreover, is consistent with a basic legal principle—that courts are not required to grant a request for relief simply because the request is unopposed.").

■ Approval of a trustee's compensation is a two-step process. *In re Citi– Toledo Partners II*, 254 B.R. 155, 165 (Bankr.N.D.Ohio 2000); *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 481. First, the reasonable amount of compensation must be determined under 11 U.S.C. § 330(a); then, it must be determined if that compensation is within the maximum amount allowable under 11 U.S.C. § 326(a).

*Trustee's Reasonable Compensation Under § 330.*

The trustee's filed time records reflect a total of 30.30 hours devoted to the adminis-

---

**4.** The trustee stated in his final report that "Counsel conducted discovery and interviewed witnesses in order to determine the likelihood of successfully defending the fraud claim. After reviewing the documents produced and evaluating the credibility of the witnesses on whom he would have to rely, counsel determined that the Trustee was un-

likely to prevail. The Trustee agreed." Trustee's Final Report and Proposed Distribution to Creditors, p. 1 (docket Entry 59).

**5.** Inasmuch as there are no timely filed proofs of claims, there are funds to pay tardily filed claims. 11 U.S.C. § 726(a)(3).

tration of this case, not including his attorney's time involved in the litigation. He states that his "Standard Rates" are $465.00 an hour for himself and $95.00 an hour for his paralegals. However, he requests compensation at the hourly rates of $265.00 and $70.00, for himself and his paralegals, respectively. The prevailing hourly rate for bankruptcy attorney's performing representing clients in this court in similar matters was $265.00 during the applicable period and the rate requested is appropriate. *See In re Computer Learning Centers, Inc.,* 285 B.R. 191 (Bankr. E.D.Va.2002).

■ Neither an attorney nor a trustee may charge a bankruptcy estate for his or her overhead. For example, attorneys do not separately charge clients for staff depositing checks into the firm's trust account, sending documents to the United States Trustee's office, printing documents or copying statements and checks. Those are clerical functions normally included in an attorney's overhead which is taken into account in the attorney's hourly rate charged to the client. In this case, the trustee utilized three assistants, two legal assistants and one project assistant, all of whom the trustee requests to compensate at $70.00 an hour. Of the 24.10 hours devoted to the administration of this case by the assistants, 15.9 hours are overhead hours. The services rendered were clerical or secretarial in nature. They cannot be separately compensated. The remaining time will be allowed: 6.2 hours for the trustee at $265.00 an hour and 8.2 hours at $70.00 an hour for legal assistants and the project assistant. The total is $2,217.00.

The court reviewed the file to determine whether there is any reason to deviate from the lodestar computation either upwards or downwards. There is no apparent reason to do so. The case was straight-forward. Bitew, the owner of the real property marketed and sold his property before the debtor filed its petition in this case. His counsel initiated and obtained the order from this court permitting the property to go to settlement with the disputed proceeds being placed in escrow until the dispute over the ownership of the funds could be resolved. Most of these actions were taken before the first meeting of creditors. There were no other assets administered.

### Computation of Maximum Fee under § 326(a)

■ The second question is whether the compensation computed above falls within the parameters of 11 U.S.C. § 326(a). It is worth repeating that § 326(a) establishes a maximum fee, not the fee itself. It is a cap, not an entitlement. *Citi-Toledo Partners II,* 254 B.R. at 165 ("[Section] 326 does not, in itself, create an entitlement to the maximum amount of compensation provided for under that section.") The reasonable fee determined above is clearly within the maximum fee permitted by § 326(a) if the trustee's basis, $297,801.29, is used. The maximum compensation would be $18,140.06. It also is less than the maximum permissible compensation if the lowest possible computational basis, $15,041.41, is used. The lowest possible basis permits compensation up to $2,254.14, a level slightly higher than computed above. Consequently, the trustee's compensation will be allowed in the amount of $2,217.00 plus expenses of $37.80.

While further discussion of the computational basis is unnecessary, the trustee at the court's request briefed the issue. A discussion may assist in future cases. The trustee asserts that the higher amount is the proper amount because he distributed money to a party in interest, Bitew. His counsel writes:

A party in interest has thus been found to include "an entity to whom distribution of estate assets is legitimately made in furtherance of the overall distribution process contemplated in bankruptcy." *In re North American Oil & Gas, Inc.,* 130 B.R. 473, 479 (Bankr.W.D.Tex.1990). Trustee's Memorandum in Support of Compensation, at 2 n. 1. (Docket Entry 66). The trustee also cites *In re Citi–Toledo Partners II,* 254 B.R. 155 (Bankr. N.D.Ohio 2000) for the proposition that to be considered a party in interest, one must "either have had a 'claim' against [the estate] or a postpetition administrative expense." Trustee's Memorandum at 3. Concluding that Bitew is a party in interest, the trustee includes the payment to him in his calculation. The analysis is more involved and the conclusion that Bitew is a party in interest is incorrect.

Both *North American Oil & Gas* and *Citi–Toledo Partners II* follow the same reasoning. The term "party in interest" while appearing in 46 sections of the Bankruptcy Code is not defined. The term was deliberately left undefined so that it may be evaluated in the particular circumstances of the applicable provision and of the case. *Citi–Toledo Partners II* at 163; *North American Oil & Gas* at 479. The function of a bankruptcy trustee is to recover assets of the estate, reduce them to money and distribute the resulting money to creditors. *Citi–Toledo Partners II* at 163; *North American Oil & Gas* at 478. Read together, for purposes of § 326(a), the phrase "moneys disbursed or turned over in the case by the trustee to parties in interest" requires several elements:

1. *Money must be disbursed.* The disbursement must be money. Distribution of a physical asset does not provide any part of the basis for the calculation of the maximum compensation. *North American Oil & Gas* at 480 ("unliquidated assets simply 'turned over' ... are not includable in the base").

2. *The trustee must disburse the money.* However, the trustee need not physically handle the money. Disbursement of money that is property of the estate that would otherwise go through the trustee's hands is includable in the base if the disbursement is made by a third party agent. For example, payment of a lien secured by real property may be paid by the settlement agent and be included in the base notwithstanding that the funds never go through the trustee's bank account. *Id.* at 478, 480–481.

3. *The money must be property of the estate.* "[T]he base will exclude property (or monies attributable to such property) returned to a third party after a determination (whether by agreement of the parties or by court order) (a) that the property in question came into the hands of the estate by means of fraud or illegality or (b) that the property is not property of the estate and should be returned to its rightful owner(s)." *Citi–Toledo Partners II* at 161; *North American Oil & Gas* at 478.

4. *The money must be distributed to a party in interest.* A party in interest is a party that holds either a claim against the debtor or is entitled to an administrative expense that is, a claim paid under § 726(a)(1) or § 503(b)(1)(A). *Citi–Toledo Partners II* at 163; *North American Oil & Gas,* 130 B.R. at 478. The distribution to the party in interest must be on account of such claim.

In this case only the first element is present. The rest are absent: The trustee did disburse money to Bitew, but he did not do so as chapter 7 trustee; the money disbursed was not property of the estate; and Bitew did not receive the money as a party in interest.

 Nobody contests the fact that the real property belonged to Bitew. Had there been no second trust, Bitew could have proceeded to settlement without any involvement in this bankruptcy case and retained all of the proceeds from the sale. The only connection with this case was the alleged second deed of trust that he contested. If it were a valid deed of trust, the proceeds from the sale of the property after payment of the admittedly valid first deed of trust would have been paid to the trustee.[6] In light of the dispute, the remaining proceeds were placed in escrow pending resolution of the dispute. The funds could have been paid into the registry of the court for safe keeping, retained by the settlement agent in escrow or placed with any other reliable third party. All the parties agreed that the escrow agent would be H. Jason Gold. He held the proceeds not in his capacity as chapter 7 trustee but in a separate capacity as an escrow agent. Bitew's motion for sale requested that the funds be held in escrow. The trustee and the debtor agreed. The order authorizing the sale provided this. This was intended to and did in fact preserve the status quo. The sales proceeds did not become property of the estate as a result of the sale nor did the trustee did receive the sales proceeds in his capacity as chapter 7 trustee.[7]

The unresolved question of the validity of the second deed of trust and, therefore, the proper distribution of the funds held in escrow by Gold, was resolved by an agreement approved by this court. The parties agreed that all the funds except $15,000 would be paid to Bitew and that Bitew, his son and the estate would release each other. The distribution of the funds was made by Gold as escrow agent, not as trustee in bankruptcy. That was the capacity in which he held the funds.

The distribution is not analogous to a distribution by an agent of the trustee, such as a settlement agent who pays a secured creditor at settlement on the sale of real property. In that case, even though the funds never pass through the trustee's account, they are property of the estate and the distribution is made at the direction and under the control of the trustee to creditors of the estate. Such a distribution is included in the computational basis. In this case, the first deed of trust was paid by the settlement agent as were the costs of sale. The trustee properly did not seek to include those disbursements in his computational basis. Those funds derived from property owned by Bitew, not the estate, and were distributed to parties with no connection to the estate. They had no claim against the estate.

**6.** It is not clear that Bitew would have received any distribution in this event. Had the deed of trust been valid, his proof of claim alleging fraud would probably have been invalid. Filed claims are less than $15,000. The surplus would have been distributed to the debtor, not Bitew. 11 U.S.C. § 726(a)(6). The computational basis in § 326(a) excludes disbursements to the debtor.

**7.** It is also instructive to note that Bitew's motion was founded on § 105, not on § 363. He, of course, did not need this court's authority to sell his own property and, in any event, could not have proceeded under § 363. Only the trustee may proceed under § 363. What he needed was immediate clear title to

complete the sale. A court sitting in equity has the authority in a proper case to order that the sale be completed with the liens, if any, attaching to the proceeds which will be held in escrow pending resolution of the ownership of the funds in question. He originally sought this relief from the United States District Court. When this bankruptcy was filed, he initially sought relief from the automatic stay so that he could obtain that relief from the District Court. He then sought that relief from this court. The parties did not agree who owned the proceeds—Bitew or the bankruptcy estate. That was the unresolved question.

The money distributed to Bitew was not property of the estate. The trustee stated in his final report that he agreed that the estate would probably lose the adversary proceeding commenced by Bitew over the ownership of the funds in question. Thus, they fall squarely within the proviso set out in *North American Oil & Gas* that the base for computation of the trustee's maximum fee under § 326(a) excludes money "returned to a third party after a determination(whether by agreement of the parties or by court order) ... that the property is not property of the estate and should be returned to its rightful owner(s)." *Id.* at 478.[8] The trustee is no more entitled to include the funds as part of the base for purposes of calculation than if he had found the money on the street, picked it up and returned it to its owner.

Nor is Bitew a party in interest as to the distribution. To be a party in interest, Bitew must have a pre-petition claim or an administrative claim against the estate. Bitew filed a proof of claim which was both unliquidated and disputed. He was a party in interest as to this claim. However, the distribution was not made to him on account of the claim. It was made on account of his ownership interest in the real property and the invalidity of the deed of trust. The claim was released without having been resolved as to liability or liquidated as to amount. The distribution was made at the time of the settlement and not as a part of the final report. If it had been made on account of the proof of claim filed, distribution would have been premature. The bar date had not passed and the scheme of distribution was unknown. The claim could have been liquidated and allowed, but distribution would have had to have waited. The settlement, the reasons given in the trustee's final report and the timing of the distribution all reflect that the distribution was on account of Bitew's ownership interest of the real property, not on account of his proof of claim. The money distributed was not property of the estate but was merely being distributed to the rightful owner.

### Conclusion

The proper basis for computing the trustee's maximum compensation under § 326(a) is $15,046.41 which is greater than the trustee's compensation computed under § 330(a). The trustee's compensation will be allowed in the amount of 2,217.00 plus expenses of $37.80. The report will be approved as modified herein with the additional available funds being paid to the unsecured creditor.

---

8. For this portion of the analysis, it does not matter whether the funds were held by Gold in his capacity as escrow agent or as chapter 7 trustee. The critical element is that the funds were not property of the estate and were returned to the rightful owner. The discussion of the escrowed nature of the funds in this case highlights the fact that the funds were not property of the estate.