**In re Leo C. RASBERRY, Debtor.**

**No. 01 B 13281.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 10, 2001.

William J. Factor, Chicago, IL, for Movant Lucent Technologies, Inc.

Leo C. Rasberry, pro se.

Gerald Mylander, Office of Glenn B. Stearns, Lisle, IL, Chapter 13 Standing Trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Lucent Technologies Inc.

(the "Employer") to determine whether the automatic stay applies to the pre-petition and/or post-petition garnished wages of Leo C. Rasberry (the "Debtor") and for relief from the stay to the extent required to comply with a pre-petition wage order entered in favor of Sterling Homes, Ltd. (the "Judgment Creditor").

For the following reasons, the Court concludes, and assumes solely on the facts in this matter, that the Judgment Creditor holds an unavoided lien pursuant to 735 ILCS 5/12–808(b) on the Debtor's pre-petition and post-petition non-exempt wages from the time the Employer was properly served with summons pursuant to 735 ILCS 5/12–805 and 5/12–806. Such lien continues as to subsequent earnings of the Debtor until the sooner of the time that the $37,989.96 underlying judgment and costs are paid in full, vacated, modified or the employment relationship is terminated. The pre-petition withheld wages of $6,092.70 are not property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and should be turned over to the Judgment Creditor who holds a presumptively secured claim pursuant to 11 U.S.C. § 506(b). The post-petition wages earned pre-confirmation, however, are part of the bankruptcy estate pursuant to 11 U.S.C. § 1306(a)(2) and are subject to the automatic stay of 11 U.S.C. § 362(a). By agreement of the parties, those wages are ordered to be held by the Employer prior to confirmation. However, that money is potentially available to the Debtor to fund his proposed Chapter 13 plan. The post-petition, pre-confirmation wages are subject to the adequate protection requirements of 11 U.S.C. § 361 for the benefit of the Judgment Creditor.

## I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(G), and (O).

## II.  FACTS AND BACKGROUND

The Debtor filed a Chapter 13 petition on April 12, 2001. He works for the Employer and listed on his Schedule I, his current monthly gross income at $7,850.01, less payroll deductions for taxes and insurance of $2,471.83, producing a net monthly take home pay of $5,378.18. He listed the Judgment Creditor as holding a disputed, unsecured non-priority claim for $35,000.00, which he scheduled as "subject to setoff and counterclaim ... under review by Illinois Appellate Court." See Schedule F of Debtor's Petition. None of the wages were claimed exempt by the Debtor in his Schedule C. The Debtor's plan proposes to pay the Chapter 13 Trustee the sum of $2,100.00 per month for 38 months from which creditors with secured and 11 U.S.C. § 507 priority claims shall be paid 100%. The plan further provides that holders of general unsecured claims are estimated to be paid 100% of their claims within 36 months and that the Debtor shall continue to make additional plan payments for up to 24 months until the Trustee has received sufficient funds to pay 100% to allowed general unsecured claimants. Furthermore, the plan provides that with respect to each allowed secured claim, the holder of the claim is to retain the lien securing such claim and that property of the estate shall revest in the Debtor upon confirmation of the plan.

Prior to the petition date, the Judgment Creditor obtained a judgment against the Debtor in the state court for $37,989.96 and thereafter initiated post-judgment

wage deduction proceedings. The Employer alleges that it was served on November 2, 2000 with a wage deduction summons issued on behalf of the Judgment Creditor, and was served with the March 15, 2001 state court wage deduction order by which it was ordered to deduct from the Debtor's wages the lesser of 15% of his gross weekly wages or the amount by which his disposable earnings for a week exceed 45 times the federal minimum hourly wage. On August 24, 1998, the Employer allegedly received from the Illinois Student Assistance Commission an order directing it to withhold certain amounts from the Debtor's earnings. Because that creditor was not served with the motion at bar and did not file any papers setting forth its position, the Court will not further address its claim, if any, or rule on this point as requested by the Employer.

On May 2, 2001 the Debtor filed a motion to compel turnover of assets of the estate or alternatively for relief under 11 U.S.C. § 547 by which he sought the Court to order the Employer to turnover any of the wages withheld. The Court denied that motion, without prejudice, for his failure to serve the Judgment Creditor and because Federal Rule of Bankruptcy Procedure 7001(7) and (9) mandates that avoidance actions procedurally require an adversary proceeding, and none of the exceptions under Rule 7001(1) applied. To date, the Judgment Creditor's lien has not been avoided.

The Employer seeks direction regarding the funds it holds. The Employer asks the Court to: (1) clarify whether the stay of § 362 or any other provision of the Bankruptcy Code prohibits it from delivering to the Judgment Creditor the sum of $6,092.70 in pre-petition withheld wages pursuant to the wage deduction order, as well as any post-petition wages due and that may become due in the future; (2)

clarify whether it may deliver to the Illinois Student Assistance Commission any amounts being withheld pursuant to a wage deduction order; and (3) grant stay relief, to the extent necessary, so that the Employer can comply with whatever obligations may be imposed upon it.

The Court requested the Debtor, the Judgment Creditor and the Chapter 13 Trustee to file responsive pleadings. Only the Chapter 13 Trustee filed a response to the motion. The motion raises an issue of first impression, in light of the recent amendments to the applicable Illinois statute, and the outcome may potentially impact other Chapter 13 plans.

## III. *DISCUSSION*

The Illinois Wage Deduction Act, 735 ILCS 5/12–801 *et. seq.*, now recodified as part of the Illinois Code of Civil Procedure, provides one means to enforce judgments by which wages constituting hourly pay, salaries, commissions, bonuses or other compensation owed by an employer to a judgment debtor, can be recovered by judgment creditors to satisfy the judgments they hold against debtors. Section 808(b) creates a lien in favor of the judgment creditor at the time of service of the wage deduction summons on the employer. Under a prior version of the statute, the lien applied to wages due at the time of service of the summons and to subsequent wages until the expiration of the employer's payroll period ending immediately prior to 84 days after service of the summons. § 5/12–808(c). Thus, the wage deduction lien could cover up to a 12 week pay period under which up to 15% of a debtor's gross wages could be deducted and held by the employer for the benefit of the judgment creditor. The remaining 85% of the debtor's gross wages are exempt. The statute was recently amended to eliminate the 12 week duration and limited time period

within which a single wage deduction procedure would be effective. *See* 1998 P.A. 90–677, § 5 (effective Jan. 1, 1999). The statute now provides that the lien continues as to subsequent earnings of the debtor until the total amount of the judgment and costs is paid.

■ For purposes of analysis under the Bankruptcy Code, the Judgment Creditor holds a judicial lien as defined in 11 U.S.C. § 101(36), which was obtained pre-petition and is a secured claim under § 506(b) in the Debtor's earned, but unpaid, pre-petition wages and future post-petition wages, and not just those earned over a 12 week period. This judicial lien has not been avoided at this point. This is so despite any appeal the Debtor may be prosecuting. Under Illinois law, a judgment is presumptively valid and conclusive until altered or set aside by a court of competent jurisdiction. *See Dillman v. Nadelhoffer*, 23 Ill. App. 168 (2d. Dist.1887). From the Debtor's Schedule I, 15% of his monthly gross wages is $1,177.50 ($7,850.01 × .15 = $1,177.50). That amount is a significant portion of the proposed plan payments, which, if made, would afford adequate protection under 11 U.S.C. § 361 to secure the remaining unpaid balance of the Judgment Creditor's claim, vis a' vis the Debtor's present and future wages.

Upon the entry of a wage deduction order, courts have held that the judgment creditor's right to payment becomes unconditional, and the debtor is divested of any claim to, or interest in, the garnished wages. *See Simon v. Mercury Fin. Co. (In re Simon)*, 153 B.R. 217, 218 (Bankr. N.D.Ill.1993); *Johnson v. Ford Motor Credit Co. (In re Johnson)*, 53 B.R. 919, 923 (Bankr.N.D.Ill.1985); *see also In re Franklin*, 210 B.R. 560, 563 (Bankr. N.D.Ill.1997) (debtor only retains an interest in deducted wages, subject to creditor's lien, until entry of wage deduction order);

*In re Vasquez*, 205 B.R. 136, 138 (Bankr. N.D.Ill.1997) (until the court enters a wage deduction order, a debtor maintains an interest in those wages); *Moore v. General Motors Acceptance Corp. (In re Moore)*, 177 B.R. 279, 281 (Bankr.S.D.Ill.1995) (once the state court makes a determination of the proper disposition of the withheld wages, the debtor's interest in the wages is transferred to the judgment creditor, and the debtor may no longer claim any exemption in the wages subject to the deduction order).

One decision which applied the Illinois statute in a Chapter 13 case was *In re Bates*, 148 B.R. 541 (Bankr.N.D.Ill.1993). The *Bates* case held that a Chapter 13 debtor retained an interest in wages deducted pre-petition pursuant to a wage deduction summons, and thus, under 11 U.S.C. § 522(f), could avoid the creditor's lien on wages as impairing an exemption. The court in *Bates* rejected the creditor's argument that the deducted wages were never property of the debtor's estate, or even if they were, that the debtor could not properly exempt them. That view was affirmed. *See* 161 B.R. 965 (N.D.Ill.1993). Because a wage deduction order was not entered in the *Bates* case, the propriety of the wage deduction was not determined, and the debtor retained a property interest in the deducted wages, which became part of the debtor's estate when she filed for bankruptcy. *Id.* at 967. *Bates* is not on point here because the Judgment Creditor did obtain a pre-petition wage deduction order and the Debtor has not claimed any part of the withheld wages exempt. Hence, judicial lien avoidance relief is unavailable under § 522(f).

None of the decisions discuss future wages payable to a Chapter 13 debtor which, when earned post-petition, become property of the estate under 11 U.S.C. § 1306(a)(2), in marked contrast to what is

included in the estates of Chapter 7 and 11 debtors. *See In re Hellums,* 772 F.2d 379, 381 (7th Cir.1985) (a debtor's earnings from services performed after the commencement of the case are excluded from the bankruptcy estate under 11 U.S.C. § 541(a)(6)). Thus, the impact of such wage deduction orders entered pre-petition against debtors who subsequently file Chapter 13 petitions is significant inasmuch as many debtors fund their plans with future income from services performed after the commencement of the case. Thus, it is apparent that a wage deduction order enforceable against a debtor's future wages for a time that could run beyond the Chapter 13 plan term, under which up to 15% of a debtor's gross wages are subject to the continuing lien of a secured judgment creditor, can have a major, if not devastating, impact on the plan and other creditors.

The Seventh Circuit construed a wage deduction statute in the context of a Chapter 7 case. *See In re Coppie,* 728 F.2d 951 (7th Cir.1984). The Court finds that *Coppie* is not on point because it applied and construed Indiana law, which, at the time, was substantively different from Illinois law. Additionally, the case did not implicate or cite § 1306(a)(2).

To date the Seventh Circuit has not directly passed on the issue at bar. The most recent decision, which is not on point, is *In re Heath,* 115 F.3d 521 (7th Cir.1997). In dicta, the court noted "[i]t is possible for the entire income of the debtor during that period to be property of the debtor's estate and so within the control of trustee, in which event any dispute over that income, including the dispute with the corner grocer, would be for the trustee, not the debtor, to litigate should the dispute result in a suit." *Id.* at 523. The court further opined that "[t]he plan as confirmed by the bankruptcy court does not

place of all of Heath's income until the completion of the plan in the debtor's estate and so in the trustee's control, but only so much of the income (or her other property) as necessary to the fulfillment of the plan." *Id.* at 524. In addition, the court stated:

> It is true that the Bankruptcy Code says that all the earnings of a Chapter 13 debtor are property of the estate. 11 U.S.C. § 1306(a)(2). But it also says that "confirmation of a plan vests *all* of the property of the estate *in the debtor*" unless the plan provides otherwise, § 1327(b)(emphasis added), which we think scotches any inference that Congress intended to render *all* Chapter 13 debtors legally and competent to manage *any* of their property. We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as it is not necessary for the fulfillment of the plan.

*Id.* (emphasis in original).

■■■ Pursuant to 735 ILCS 5/12–801 *et seq.* and case law interpreting that statute, the Court concludes that once the wage deduction order was entered prepetition, the Debtor was divested of any claim to, or interest in, his pre-petition garnished wages. Moreover, because he had no interest in those garnished wages, they did not become property of the bankruptcy estate under § 541 when he filed this case. A different result occurs concerning the Debtor's post-petition wages, notwithstanding the wage deduction order. The Court concludes that those wages are expressly part of the bankruptcy estate pursuant to § 1306(a)(2) and are subject to the automatic stay under § 362(a).

As correctly cited by the Trustee, it has been noted that a Chapter 7 debtor's bankruptcy filing effectively stayed entry of a turnover order on a post-judgment garnishment proceeding because of the provisions of § 362(a)(6) stay any act to recover a claim against the debtor that arose before the commencement of the bankruptcy case. *See Chicago Painters' and Decorators' Pension, Health and Welfare and Deferred Sav. Plan Trust Funds v. Cunha,* 121 B.R. 232, 233 (N.D.Ill.1990). Thus, the Court readily agrees that §§ 362(a) and 1306(a)(2) preclude the enforcement of the state court wage deduction order as to the post-petition wages of the Debtor. Therefore, the Court denies the Employer's request for stay relief at this time, pending further order of the Court.

In the plan at bar, it appears that the Judgment Creditor's claim can be paid in full from payments made to the Trustee over the term of the plan. At 15% of the Debtor's presently monthly gross income ($1,177.50), the judgment of $37,989.96, less payment of the withheld pre-petition wages to the Judgment Creditor ($6,092.70), leaves the balance of the Judgment Creditor's claim at $31,897.26 (excluding applicable statutory interest of 9% per annum accruing post-judgment). Under the plan, the Judgment Creditor's claim would be satisfied and paid in approximately 27–28 months. ($31,897.26 ÷ $1,177.50).

▮ Accordingly, if the Trustee recommends that the plan should be confirmed, the post-petition withheld wages currently held by the Employer can be ordered to be turned over to the Trustee. The Employer can be ordered to turnover plan monthly installments to the Trustee withheld pursuant to a post-confirmation order entered under 11 U.S.C. § 1325(c), rather than directly to the Judgment Creditor via the wage deduction order.

The Judgment Creditor has a continuing lien under 735 ILCS 5/12–808(b) as to the Debtor's future wages to secure the unpaid balance owed under the judgment, which will be adequately protected as long as the Debtor makes plan payments and remains employed at the current job and rate of compensation. In the event the plan is not confirmed and the case is dismissed, the Court can enter the appropriate order in conformance with 11 U.S.C. § 1326(a)(2) for turnover and refund of any plan payments to the Debtor, subject to the lien of the Judgment Creditor. *See In re Clifford,* 182 B.R. 229 (Bankr.N.D.Ill.1995).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes, and assumes solely on the facts at bar, that the Judgment Creditor holds an unavoided lien pursuant to 735 ILCS 5/12–808(b) on the Debtor's pre-petition and post-petition non-exempt wages from the time the Employer was properly served with the wage deduction summons. Such lien continues as to subsequent earnings of the Debtor until the sooner of the time that the $37,989.96 underlying judgment and costs are paid in full, vacated, modified or the employment relationship is terminated. The pre-petition withheld wages of $6,092.70 are not property of the bankruptcy estate pursuant to § 541 and should be turned over to the Judgment Creditor who holds a presumptively secured claim under § 506(b). The post-petition wages earned pre-confirmation, however, are part of the bankruptcy estate under § 1306(a)(2) and are subject to the automatic stay. By agreement of the parties, those wages are ordered to be held by the Employer prior to confirmation. However, that money is potentially available to the Debtor to fund his proposed Chapter 13 plan. The post-petition, pre-confirmation wages are subject to the adequate

protection requirements of § 361 for the benefit of the Judgment Creditor.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ORDER

For the reasons set forth in a Memorandum Opinion dated the 10th day of July, 2001, the Court hereby concludes, and assumes solely on the facts in this matter, that Sterling Homes, Ltd. holds an unavoided lien pursuant to 735 ILCS 5/12–808(b) on the Debtor's prepetition and post-petition non-exempt wages from the time Lucent Technologies Inc. was properly served with summons pursuant to 735 ILCS 5/12–805 and 5/12–806. Such lien continues as to subsequent earnings of the Debtor until the sooner of the time that the $37,989.96 underlying judgment and costs are paid in full, vacated, modified or the employment relationship is terminated. The pre-petition withheld wages of $6,092.70 are not property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and should be turned over to Sterling Homes, Ltd. who holds a presumptively secured claim pursuant to 11 U.S.C. § 506(b). The post-petition wages earned pre-confirmation, however, are part of the bankruptcy estate pursuant to 11 U.S.C. § 1306(a)(2) and are subject to the automatic stay of 11 U.S.C. § 362(a). By agreement of the parties, those wages are ordered to be held by Lucent Technologies Inc. prior to confirmation. However, that money is potentially available to the Debtor to fund his proposed Chapter 13 plan. The post-petition, pre-confirmation wages are subject to the adequate protection re-

quirements of 11 U.S.C. § 361 for the benefit of Sterling Homes, Ltd.