**In re John Edward TAYLOR and Yolanda Y. Taylor, Debtors.**

No. 01–44640–S.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Aug. 27, 2003.

Michael S. Mitchell, Campbell, Williams & Mitchell, PLLC, Dallas, TX, for Debtors.

Charles E. Lauffer, Jr., Ritcheson, Dollahite & Lauffer, PC, Tyler, TX, for G.E. Capital Corp.

## OPINION

### DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Debtor's Motion to Modify Chapter 13 Plan Post–Confirmation filed by John and Yolanda Taylor, the Debtors herein ("Debtors"). This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtors initiated this bankruptcy proceeding by filing a petition for relief under Chapter 13 of Title 11 of the U.S.Code on November 8, 2001. On May 8, 2002, this Court entered the Amended Order Confirming Chapter 13 Plan ("Confirmation Order"). Pursuant to the Confirmation Order, the Debtors were to make 58 monthly payments to the Standing Chapter 13 Trustee during the life of the plan, together with their tax refunds, for the benefit of their creditors. Included in the plan is the claim of GE Capital Corp. ("GECC"), secured by a 1993 Cadillac Seville valued at $9,575.00 (the "Vehicle") to be paid at the interest rate of 18% over the life of the plan. Some three weeks into the plan term, the Debtors voluntarily surrendered the Vehicle to GECC complaining of mechanical failure. The parties stipulate in their Agreed Pre–Trial Stipulations that GECC took possession of and sold that Vehicle at auction for a total of $1,000. Pursuant to the parties' Agreed Pre–Trial Stipulations, GECC's net proceeds after deducting the costs of the sale were $821.50. The parties also stipulated that GECC received $651.32 through February 14, 2003 from the Chapter 13 Trustee in disbursements under the Confirmed Plan.

The Debtors filed the Motion To Modify Chapter 13 Plan Post–Confirmation now before the Court on the basis that the Plan, "in its current form is not feasible and must be modified [to] provide for the surrender of the Debtors' 1991 Infinity Q45 and 1993 Cadillac Seville." The Debtors proposed to pay GECC's secured claim in the amount of $651.32, being the amount GECC had already received prior to the surrender of the Vehicle, and to treat any deficiency in accordance with the treatment of other general unsecured creditors of the Debtors. Arcadia Financial, the secured lender on the Infinity filed no response. GECC filed a response asking that the Court deny the Motion but advising the Court that it was "prepared to repossess the subject vehicle and resell it in its current condition". However, GECC stated that the "Debtors remain liable for the difference between the value realized by the sale and the outstanding principal amount of [GECC's] allowed secured claim under the Debtors' confirmed plan with interest" . . . until paid in full. The matter came before the Court pursuant to regular setting. At the trial, GECC advised the Court that it had sold the Vehicle. (*Agreed Stipulations.*)[1] After hearing, the matter was taken under advisement by the Court.

## DISCUSSION

■ May a debtor whose Chapter 13 plan has been confirmed subsequently

---

**1.** An Agreed Order entered into between the parties including language that the stay would lift upon default following notice and a time to cure was entered of record on May 21, 2002, and submitted to the Court at the hearing as Exhibit P–2.

modify that plan to provide for surrender of collateral securing an allowed secured claim of a creditor in full satisfaction of the secured portion of that claim and reclassify the deficiency as an unsecured claim? The issue now before the Court is a matter of first impression in this Court and one upon which the Fifth Circuit has not ruled previously. While there is no direct authority from the Fifth Circuit regarding this issue, several Bankruptcy Courts and the Sixth Circuit Court of Appeals have addressed the issue of post-confirmation modification and surrender of secured collateral with differing results. This Court is not in a position to provide a definitive resolution to the uneven jurisprudential landscape. The Court's decision in this matter is fact driven and fact specific.[2]

■■■ "This Court is bound, when statutory language is unambiguous to interpret statutes according to the clear meaning of their language." *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524,

---

**2.** A Michigan Bankruptcy Court provided the following history of the issue published in 2000: The courts have disagreed; some conclude such a reclassification is permissible while others conclude the statute prohibits such a reclassification. Compare, e.g., *Matter of Day*, 247 B.R. 898 (Bankr.M.D.Ga.2000); *In re Waller*, 224 B.R. 876 (Bankr.W.D.Tenn. 1998); *In re Anderson*, 153 B.R. 527 (Bankr. M.D.Tenn.1993); *In re Rimmer*, 143 B.R. 871 (Bankr.W.D.Tenn.1992); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989); *In re Stone*, 91 B.R. 423 (Bankr.N.D.Ohio 1988); (all stating a debtor may use § 1329 to surrender a vehicle and reclassify any deficiency claim as unsecured) with, e.g., *Chrysler Financial Corp. v. Nolan*, 234 B.R. 390 (M.D.Tenn.1999); *Sharpe v. Ford Motor Credit Co. (In re Sharpe)*, 122 B.R. 708 (E.D.Tenn.1991); *In re Meeks*, 237 B.R. 856 (Bankr.M.D.Fla.1999); *In re Coleman*, 231 B.R. 397 (Bankr.S.D.Ga.1999); *In re Dunlap*, 215 B.R. 867 (Bankr.E.D.Ark. 1997); *In re Banks*, 161 B.R. 375 (Bankr. S.D.Miss.1993); *Matter of Abercrombie*, 39 B.R. 178 (Bankr.N.D.Ga.1984) (all stating that § 1329 does not permit postconfirmation modification by surrender of collateral and reclassifying secured claim balance as unsecured).
*In re Goos*, 253 B.R. 416, 420(Bankr.W.D.Mich.2000).

More recently, the Northern District of Texas updated that history:
The legal issue presented here has been addressed by a number of courts. Unfortunately, the courts do not agree on the correct interpretation of the Bankruptcy Code in answer to this question. Some courts allow such a modification, while others do not. See *In re Goos*, 253 B.R. 416 (Bankr.W.D.Mich.2000)(summarizing the current case law). Not to be outdone, the commentators are also in disagreement. While two bankruptcy treatises suggest that a chapter 13 plan can be modified to surrender collateral and reclassify the resulting deficiency if the other requirements for confirmation of a modified plan are satisfied, see Keith M. Lundin, Chapter 13 Bankruptcy, § 6.49, at 6-126 (1993); 8 Collier on Bankruptcy ¶ 1329.02, at 1329-4 (Lawrence P. King ed., 15th ed.1992), a third states that "the emerging majority trend holds that § 1329 may not be utilized by a debtor to voluntarily surrender collateral, and reclassify any deficiency after the creditor's sale of the collateral to an unsecured claim," see 5 William L. Norton, Jr., Norton Bankruptcy Law and Practice, § 124:3, at 124-39 (2d ed.1997). Following the Sixth Circuit's decision in *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000), this Court has recently held that a chapter 13 debtor may not modify her confirmed chapter 13 plan to surrender a car in satisfaction of an allowed secured claim. See *In re Coffman*, 271 B.R. 492 (Bankr. N.D.Tex.2002)*(Jones, J)*. Although in agreement with the result reached in both *Nolan* and *Coffman*, this Court will apply what it perceives is a different analysis to come to that same conclusion here—the Debtor may not modify the Plan to surrender the Car to CPS over its objection.
*In re Cameron*, 274 B.R. 457, 459-460 (Bankr. N.D.Tex.2002).

Cases appearing around the same time as the *Cameron* case which find modification permissible are: *In re Hernandez*, 282 B.R. 200 (Bankr.S.D.Tex.2002); *In re Zieder*, 263 B.R. 114 (Bankr.Ariz.2001), *In re Knappen*, 281 B.R. 714 (Bankr.D.N.M.2002) and *In re Townley*, 256 B.R. 697 (Bankr.D.N.J.2000).

2527, 69 L.Ed.2d 246 (1981). *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Upon confirmation, a plan is binding on the debtor and each creditor. *See 11 U.S.C. § 1327(a).* Numerous courts have held that confirmation of a plan is res judicata of all issues that could or should have been litigated at the confirmation hearing. Section 1329(a) of the Bankruptcy Code creates a statutory exception to the binding effect of a confirmed chapter 13 plan because it authorizes certain post-confirmation modifications to such a plan. *In re Cameron*, 274 B.R. 457, 459 (Bankr.N.D.Tex.2002) citing to *In re Coffman, Supra*, at 495 and *In re Goos, supra,* at 419.

11 U.S.C. § 1329 addresses post confirmation plan modifications. It provides for same as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

The facts before the Court in this matter are that, following the filing of pleadings on this issue, GECC took possession of the vehicle. In so doing, GECC received the indubitable equivalent of its claim. *Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1349–50 (5th Cir.1989). Further, GECC liquidated its collateral and reduced the indubitable equivalent to cash proceeds. Thus, as a result of having sold the Vehicle at auction, GECC received payment on its claim as contemplated under 11 U.S.C.A. § 1329(a).[3] In effect, there has been a novation between the parties.

The matter of modification came before the Court as a *fait accompli.* In this regard, it is distinguishable from *In re Nolan*, 232 F.3d 528 (6th Cir.2000) and the line of cases that follow it. The facts, like the result, are comparable to the Court's holding in *In re Zieder*, 263 B.R. 114 (Bankr.D.Ariz.2001)in which the Court found "adequate cause" under § 502(j) to re-consider an allowed secured claim "according to the equities of the case" given that there was no longer any collateral securing the creditor's claim.[4] *See also, In*

---

**3.** GECC argued that the sale was necessary to fulfill the duty to mitigate damages. The law provides remedies for expedited resolution of such problems in the form, inter alia, of emergency hearings, injunctive relief and motions to compel compliance.

**4.** *11 U.S.C.A. Sec. 502—Allowance of Claims or Interests*

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsec-

tion does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover

re Knappen, 281 B.R. 714 (Bankr.D.N.M. 2002). This Court might very well reach a different result on a set of facts comparable to those in Nolan. However, the combined actions of Debtor and Creditor have changed the situation between these parties. Debtor is not seeking to surrender a vehicle. It has already been surrendered to Creditor and sold by Creditor. It would be grossly unfair to engage in a legal fiction and declare Creditor's debt secured when the collateral has already been sold. There can be no secured debt if there is no collateral.

Many of the cases detailed in footnote 2 contain various analyses of who should bear the risk of depreciation of the value of the collateral and come to varying results. This Court's analysis of that aspect of what are necessarily policy considerations is that the risk of depreciation in the value of the collateral is not changed by the fact of a bankruptcy proceeding. Any lender who lends and takes a security interest in collateral runs the risk of collateral depreciation and runs the risk of ultimately foreclosing on worthless collateral and being left with an unsecured claim. This Court can ascertain no reason why this Creditor should suddenly be placed in an extremely favorable position of having

received its collateral, liquidated it and still be able to collect on the debt as if it were secured. The filing of the bankruptcy did not cause the decline in the value of the collateral and the Creditor has exercised the same remedies it would have been able to exercise under general commercial law where the result would have been that the creditor is left with an unsecured claim upon disposition of the collateral. This Court has no alternative [5], given the facts, but to allow modification of the confirmed plan for the limited purpose of taking account of the payment received from another source. Both § 506(a) and the equities of the case dictate such result.[6] In accordance with the reasoning of the Zieder Court, the amount of scheduled payments on GECC's secured claim as of the date of the sale of the collateral, should be reduced to zero. Any deficiency claim remaining has already been treated under the terms of the confirmed plan, which provides for payment of same pro rata among unsecured creditors after distribution on allowed secured, priority, administrative and debtor attorney fee claims.

An order will be entered accordingly.

from a creditor any excess payment or transfer made to such creditor.
11 U.S.C.A. Sec. 502(j).

5. However, the Court has entertained the notion of finding both parties in contempt of this Court's order of confirmation both by their vigilante acts and by filing pleadings then acting absent leave of Court while the hearing was pending. This Court is concerned with ruling so as to foster an attitude among the bar that it may be "easier to obtain forgiveness than permission" on post-confirmation plan modifications.

6. § 506. Determination of secured status
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under

section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C.A Section 506(a).