**In re Robert W. EARLEY, Debtors.**

No. 03 B 38727.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 5, 2004.

quency. Triad Financial Corporation holds a judgment against debtor Robert Earley and has a lien on his wages under the Illinois Wage Deduction Act, 735 ILCS 5/12–801 *et seq.* (2002) (the "IWDA"). In his chapter 13 plan, however, Earley proposes to treat Triad's claim as unsecured. The question: must a debtor's chapter 13 plan treat as secured the claim of a judgment creditor holding a garnishment lien on the debtor's wages under the IWDA? The answer: no.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans); *see In re Smith,* 848 F.2d 813, 816 (7th Cir.1988). The court accordingly may enter a final judgment. *Smith,* 848 F.2d at 816.

### 2. Background

John J. Ellman, David M. Siegel & Associates, Northbrook, IL, for Debtor.

Kenneth B. Drost, P.C., Barrington, IL, for Triad Financial Corporation.

### MEMORANDUM OPINION AND ORDER

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

This matter presents a question that seems to be arising with increasing fre-

The following undisputed facts are drawn from the briefs, the exhibits to the briefs, and the court's own docket.[1]

#### a. The State Court Proceedings

In December 1999, Earley bought a used 1998 Dodge Intrepid from Jack–Son Auto Sales in Waukegan, Illinois. The total sales price was $35,005.40. Following the sale, Jack–Son assigned its contract with Earley to Triad. Earley defaulted on the contract, and Triad brought what it

---

1. These facts are not substantiated with anything resembling admissible evidence: the parties simply assert facts in their papers and attach documents. Factual assertions of counsel in briefs are not evidence. *In re Osborne,* 257 B.R. 14, 19–20 (Bankr.C.D.Cal. 2000). Neither are exhibits to briefs—not, at least, without an accompanying affidavit establishing the necessary foundation for their admission. *In re Vincente,* 257 B.R. 168, 181

n. 21 (Bankr.E.D.Pa.2001). Since there is no factual dispute here, however, and since neither party has objected to admissibility, the court will view the facts asserted as established. *Cf. In re Liberty Livestock Co.,* 198 B.R. 365, 370 n. 6 (Bankr.D.Kan.1996) (accepting as evidence attached exhibit on which both parties relied, although exhibit was not authenticated or identified in an affidavit).

calls "an enforcement action" against Earley in the Circuit Court of Lake County, Illinois. At some point, Triad also repossessed the car. On December 9, 2002, the circuit court entered a judgment in the action in favor of Triad and against Earley for $11,680.10.

A year later, Triad sought to collect its judgment through wage garnishment proceedings under the Illinois Wage Deduction Act, 735 ILCS 5/12–801 *et seq.* (2002). A summons was issued, and the summons and wage garnishment interrogatories were served on Earley's employer, Lake Forest Hospital. The Hospital answered the interrogatories, indicating that funds were available. Apparently, Earley did not contest the garnishment proceeding (or if he did he was unsuccessful), because on January 27, 2003 the circuit court entered a wage deduction order imposing a lien on Earley's wages in the amount of $11,745.86. The Hospital was ordered to "deduct 15% of the defendant's non-exempt wages ... each pay period" and remit the funds to Triad's lawyer until the judgment (plus interest and costs) was paid in full.

### b. The Bankruptcy Proceedings

On September 22, 2003, Earley filed a petition for relief under chapter 13 of the Bankruptcy Code.[2] Schedule F accompanying the petition listed Triad as an unsecured creditor holding a non-priority claim. With his petition, Earley also filed a proposed chapter 13 plan using the court's Model Plan. Consistent with the petition, the proposed plan did not include Triad in paragraph 5 as a creditor with a secured claim, and so by implication the plan proposed to treat Triad with the class of unsecured creditors to be paid 10% of their claims.

On October 22, 2003, Triad filed a proof of claim for $13,733.24 in Earley's bankruptcy. The form described Triad's claim as "secured" and listed the Dodge Intrepid as collateral although the car had long since been repossessed. Two months later, Triad filed a replacement proof of claim reducing the amount to $11,680.10. This form likewise described Triad's claim as "secured," but it listed as collateral the "wage deduction order."

Now before the court is Triad's objection to the confirmation of the plan and motion to dismiss the case. Citing *In re Rasberry*, 264 B.R. 495 (Bankr.N.D.Ill. 2001), Triad asserts that it has a "perfected security interest" in Earley's wages, including wages earned post-petition. Earley's plan, Triad complains, "does not propose to pay Movant's claim as a secured claim" as section 1325(a)(5)(B)(ii) of the Bankruptcy Code, 11 U.S.C. § 1325(a)(5)(B)(ii), requires. Because Earley is in fact "incapable" of formulating a plan that will pay the value of its secured claim, Triad asks that the case be dismissed.

Earley responds that under *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), pre-petition liens on wages do not survive bankruptcy. According to Earley, not six months ago in *In re Pierce*, No. 03 B 6812 (Bankr.N.D.Ill.), another judge of this court issued an oral ruling against Triad on this very point, a ruling in which the court cited *Hunt*. Because *Hunt* "controls" the outcome, Earley argues, Triad's objection should be overruled and its motion denied.

**2.** Earley was not subject to eight months of garnished wages before his bankruptcy filing, as the September date suggests. Earley in fact filed for protection under chapter 13 in March 2003, but that case was dismissed August 22, 2003 on the motion of the standing trustee. The current case was filed one month later. The parties have not suggested that the first case has any effect on the issues Triad raises in this one.

The objection and motion are fully briefed and ready for decision.

### 3. Discussion

Earley's plan properly treats Triad's claim as unsecured, but not because *Hunt* controls the issue. It does not. Triad's claim is unsecured because of the nature of Triad's lien and the interplay between the IWDA and the automatic stay under the Bankruptcy Code, 11 U.S.C. § 362(a). Triad's objection will therefore be overruled and its motion to dismiss denied.

#### a. The Proof of Claim Question

■ Before reaching the matter of the garnishment lien, a preliminary question must be addressed. Earley asserts that Triad's proof of claim lists a debt secured only by the car. Because the car was repossessed, he says, Triad's claim is unsecured. Triad answers that a replacement proof of claim was later filed based on the judgment. Triad adds that because the later proof of claim calls itself "secured," and because Earley did not object to the proof of claim, Triad's claim is secured. Both parties, in other words, deem the proofs of claim conclusive on the question of whether Triad has a secured claim.

Both parties are mistaken. Not only are proofs of claim not conclusive on the question of secured status, they are irrelevant to it. In making these arguments, Earley and Triad confuse the claims allowance process under sections 501 and 502 with the process for determining secured status and valuing collateral under section 506. *See In re Taylor*, 289 B.R. 379, 386 (Bankr.N.D.Ind.2003); *Hildebrand v. Hays Imports, Inc. (In re Johnson)*, 279 B.R. 218, 223 (Bankr.M.D.Tenn.2002); *In re Fareed*, 262 B.R. 761, 765 (Bankr. N.D.Ill.2001).

The Code provides a process for creditors to make claims for payment out of the assets of the bankruptcy estate. Section 501 permits a creditor to file a "proof of claim," 11 U.S.C. § 501(a), which under section 502(a) will be deemed "allowed" unless there is an objection. 11 U.S.C. § 502(a). If there is, section 502(b) requires the court (after notice and a hearing) to "determine the amount of such claim" and to allow the claim unless it falls into one of nine categories. 11 U.S.C. § 502(b). Specific procedural rules apply to proofs of claim and claims objections. *See* Fed. R. Bankr.P. 3001–3008.

■ The Code provides a separate process for determining whether a creditor's claim is secured and valuing the creditor's collateral. *Taylor*, 289 B.R. at 386. Section 506 governs those processes—processes that take place only if there is first an "allowed claim" under section 502(a), 11 U.S.C. § 506(a)—and a separate procedural rule applies to them. *See* Fed. R. Bankr.P. 3012. Unlike the allowance of claims, which will occur on its own through sheer inertia, the valuation of collateral and the determination of secured status require judicial action, usually (though not always) prompted by motion. *Id; see Taylor*, 289 B.R. at 386.

■ Because the processes under sections 502 and 506 are separate, the operation of one has no effect on the operation of the other. Hence, the allowance of a claim means simply that the claim is valid and has been allowed as to "amount." 11 U.S.C. § 502(b); Fed. R. Bankr.P. 3001(f); *Taylor*, 289 B.R. at 386; *In re Adams*, 270 B.R. 263, 269 (Bankr.N.D.Ill.2001); *Fareed*, 262 B.R. at 765. That a claim is "allowed" says nothing at all about whether the claim is secured or unsecured, or what value the collateral securing the claim might have. *Fareed*, 262 B.R. at 765 (noting that "nothing in § 502 distinguishes between secured and unsecured claims"); *Taylor*, 289 B.R. at 386 n. 4.

By filing its proof of claim, then, Triad established that it had a valid claim for $11,680.10. But the proof of claim did not establish that the claim was secured. Despite the claim's allowance, Earley remained entitled to contest Triad's secured status. And he has contested it, proposing a plan that treats Triad's claim as unsecured. *See Taylor,* 289 B.R. at 386 n. 4; *Hildebrand,* 279 B.R. at 224.

### b. The Wage Deduction Question

■ So to the main question: is Earley entitled in his plan to treat Triad's claim as unsecured? He is, and the reasons why are fairly straightforward. Under Illinois law, the lien that the IWDA confers attaches only when wages are earned. The automatic stay, however, prevents the lien from attaching to wages earned post-petition. With no collateral securing the lien, the creditor's claim must be deemed unsecured. To the extent *Rasberry* holds otherwise, the court respectfully declines to follow it.

■ Because the " 'basic federal rule' is that state law governs the substance of claims," *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (quoting *Butner v. United States,* 440 U.S. 48, 57, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)), the IWDA is the proper starting point for considering the nature of Triad's claim. The IWDA provides a simple and convenient method for a judgment creditor to collect his judgment by latching on to the judgment debtor's wages and having the wages paid directly to the creditor. *See generally* 735 ILCS 5/12–801 *et seq.* (2002).

The creditor puts matters in motion under the IWDA by filing an affidavit stating that an employer is indebted to the judgment debtor for wages "due or to become due," along with a set of interrogatories to the employer about the wages. 735 ILCS 5/12–805(a) (2002). A summons then issues requiring the employer to answer the interrogatories. *Id.* On service of the summons, the interrogatories, the judgment and a wage deduction notice, 735 ILCS 5/12–805(a), 12–806 (2002), the employer must start deducting a portion of the wages, 735 ILCS 5/12–808(b), (e) (2002).

Assuming the employer appears and answers the interrogatories, a hearing is held at which disputes about the employer's answers and other claims to the wages can be resolved.[3] 735 ILCS 5/12–809, 12–810, 12–811(a) (2002). If at that point the court finds against the employer and in favor of the creditor, a wage deduction order is entered requiring the employer to pay the wages deducted to the creditor on a monthly basis until the creditor's judgment is satisfied. 735 ILCS 12–808(e), 12–811(d) (2002); *see generally Rasberry,* 264 B.R. at 497–98 (describing procedure under IWDA); *In re Youngblood,* 212 B.R. 593, 596 (Bankr.N.D.Ill.1997) (same).

Service of the garnishment summons to the employer is a critical event under the IWDA and does more than just require the employer to appear, answer, and begin wage deductions. It also creates a lien in the creditor's favor on the wages due at the time of service. 735 ILCS 5/12–808(b) (2002). That lien, moreover, is a "continuing lien," extending beyond the wages then due: section 12–808(b) declares that the

---

**3.** The IWDA has a provision designed to encourage the participation of reluctant employers. Should the employer fail to appear and answer, the court enters a conditional judgment against the employer for the amount due the creditor on the underlying judgment. 735 ILCS 5/12–807 (2002). A summons then issues to confirm the conditional judgment. If after service of the summons the employer still fails to appear and answer, the conditional judgment is confirmed. *Id.*

"lien shall continue as to subsequent earnings until the total amount due upon the judgment and costs is paid...." *Id.*

■ But although the creditor obtains a continuing lien on "subsequent earnings" when the summons is served, the lien does not actually attach to those earnings at that point. The reason is that future earnings are contingent on future services the judgment debtor has not yet performed and indeed may never perform. *See Harrell v. United States,* 13 F.3d 232, 234 (7th Cir.1993) (employee has no right to wages not yet earned, that right "being contingent on his continued employment"). In Illinois, a garnishment lien attaches to wages only when the judgment debtor has a right to them, and the judgment debtor has no right to them until he does work entitling him to be paid. *See General Motors Acceptance Corp. v. Bates (In re Bates),* 161 B.R. 965, 968 (N.D.Ill.1993); *In re Garcia,* 149 B.R. 530, 534 (Bankr. N.D.Ill.), *aff'd,* 155 B.R. 173 (N.D.Ill.1993).

Illinois decisions on advance payments to employees illustrate this principle. In *Taylor v. Taylor,* 44 Ill.2d 139, 254 N.E.2d 445 (1969), for example, the plaintiff obtained a judgment against her ex-husband for past-due alimony and in October 1967 began wage garnishment proceedings against him. Answering the summons, the ex-husband's employer said that his wages had been paid at the end of each month through October 1967, but that wages for November 1967 were paid in advance. *Id.* at 140, 254 N.E.2d at 446. The employer argued that the advance payment was not subject to a wage deduction order. *Id.* The circuit court disagreed and entered judgment against the employer.

The supreme court, however, reversed. Noting that the IWDA permits wage garnishments on the theory that an employer is indebted to its employee for work done, the court reasoned that in the case of advance payments no work has been done and so there is "no debt in being in favor of the employee to be subjected to the proceeding." *Id.* at 144, 254 N.E.2d at 447. The court acknowledged the statutory language that the lien under the IWDA "'continues as to subsequent earnings'" but said: "we cannot consider that this language comprehends advanced moneys which are unearned.'" [4] *Id.* at 144, 254 N.E.2d at 448; *see also Campagna v. Automatic Elec. Co.,* 293 Ill.App. 437, 12 N.E.2d 695 (1938); 20 Ill. Law & Prac. *Garnishments* § 29 at 194 (1992). Under the IWDA, then, the lien attaches only when the wages are earned, not before.

■■ When a wage deduction order is entered and the judgment debtor responds by filing bankruptcy, the lien cannot attach to wages the debtor—now a debtor in the bankruptcy sense—earns thereafter. As soon as the petition is filed, the automatic stay in section 362 takes effect. *In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1231 (7th Cir.1990). One of "the fundamental debtor protections provided by the bankruptcy laws," *In re Benalcazar,* 283 B.R. 514, 521 (Bankr.N.D.Ill.2002) (internal quotation omitted), the stay bars creditors from a variety of actions affecting the debtor and property of the bankruptcy estate. *See* 11 U.S.C. § 362(a). The stay thus "preserve[s] the status quo" as of the filing. *Carlson v. United States (In re Carlson),* 126 F.3d 915, 923 (7th Cir.1997).

Among other things, the automatic stay prevents an Illinois garnishment lien, con-

---

4. Illinois law is no oddity in this respect. Although the law of wage garnishments tends to be statutory and so varies from state to state, the general rule is that only an existing indebtedness resulting from services rendered can be garnished, not unearned wages. *See* 38 C.J.S. *Garnishment* § 122 at 361 (1996).

tinuing lien though it is, from attaching to wages earned post-petition. The stay applies to "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4); *see Carlson*, 126 F.3d at 923. In a chapter 13 case, post-petition wages are property of the estate, 11 U.S.C. § 1306(a)(2), and the attachment of a lien post-petition is an "act" to perfect or enforce the lien, although the lien is pre-petition and attaches solely by operation of law, *see United States v. Gold (In re Avis)*, 178 F.3d 718, 722–23 (4th Cir.1999) (holding that stay barred pre-petition continuing federal tax lien from attaching to property debtor acquired post-petition); *United States v. Fuller (In re Fuller)*, 134 B.R. 945, 948 (9th Cir. BAP 1992).[5]

Because a garnishment lien cannot attach to post-petition wages, the judgment creditor's claim to those wages is unsecured. A creditor has a secured claim in bankruptcy if the claim is "secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a). A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(36). But there is no "charge against or interest in property" if the automatic stay prevents the lien from attaching. *Krippendorf v. Campbell (In re Campbell)*, 187 B.R. 521, 522–23 (Bankr.W.D.Va.1995) (where lien could not attach, tax creditors were "merely unsecured creditors"); *see also In re Merry–Go–Round Enters., Inc.*, 227 B.R. 775, 784 (Bankr.D.Md.1998) (same). In that event, no collateral supports the lien. And a claim with no collateral supporting it is by definition unsecured. *In re Tay-*

*lor*, 297 B.R. 487, 491 (Bankr.E.D.Tex. 2003) ("There can be no secured debt if there is no collateral."); *Yi v. Citibank (Maryland), N.A. (In re Yi)*, 219 B.R. 394, 399 (E.D.Va.1998).

Under these principles, Triad has no more than an unsecured claim in Earley's bankruptcy. As to wages earned and deducted *pre*-petition, Triad has no claim at all—at least not in the bankruptcy. When the summons was served on Earley's employer, Triad obtained a lien on wages due Earley as of the date of service as well as a continuing lien "as to subsequent earnings." 735 ILCS 5/12–808(b) (2002). Entry of the wage deduction order, however, meant that Earley lost any legal interest in wages earned and deducted up to the bankruptcy. *In re Franklin*, 210 B.R. 560, 563 (Bankr.N.D.Ill.1997); *Busey Bank v. Salyards*, 304 Ill.App.3d 214, 220, 238 Ill.Dec. 197, 711 N.E.2d 10, 15 (4th Dist.1999). Those wages are not part of the bankruptcy estate. 11 U.S.C. § 541(a)(1).

The post-petition wages are another matter. Again, Illinois law granted Triad a continuing lien on "subsequent earnings" once the summons was served. 735 ILCS 5/12–808(b) (2002). Since this is a chapter 13 case, moreover, Earley's post-petition wages are property of his estate. 11 U.S.C. § 1306(a)(2). But Triad's lien cannot attach to Earley's wages until he earns them, *Taylor*, 44 Ill.2d at 144, 254 N.E.2d at 447–48, and the intervention of the automatic stay when Earley filed bankruptcy prevents the lien from attaching to any wages earned post-petition, *see Gold*, 178 F.3d at 722–23.[6] Because the lien does not

---

5. It is well established that the stay halts pre-petition wage garnishments. *See In re Briskey*, 258 B.R. 473, 476 (Bankr.M.D.Ala.2001); *Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 659, 660 (Bankr.W.D.Wis.1996) (making this point and noting as well that a

wage garnishment lien "cannot attach until the debtor earns the wages"); *In re Passmore*, 156 B.R. 595, 599 (Bankr.E.D.Wis.1993).

6. The wage deduction order here expressly ceased to be effective "when the employee

attach to the wages, no collateral supports Triad's claim.[7] The claim is unsecured. *Taylor*, 297 B.R. at 491.

This outcome is sensible for at least two reasons. First, it lends symmetry to the workings of the Code, affording similar treatment to consensual and non-consensual liens. Under section 552(a), property acquired post-petition "is not subject to any lien resulting from any security agreement"—a consensual lien—entered into pre-petition. 11 U.S.C. § 552(a). As the "security agreement" limitation suggests, however, section 552(a) does not apply to non-consensual liens. *Alliance Capital Management L.P. v. County of Orange (In re County of Orange)*, 189 B.R. 499, 502 (C.D.Cal.1995). The Code has no comparable provision for those liens. If the automatic stay did not stop non-consensual pre-petition liens like Triad's from attaching to post-petition property, the holders of those liens would obtain a real advantage over the holders of consensual liens—a result with no justification in bankruptcy policy.

Second, any other outcome would effectively remove chapter 13 as an option for debtors like Earley, forced into bankruptcy because of a judgment and subsequent wage garnishment. Although anyone with "regular income" who meets the statutory debt limits may be a debtor in a chapter 13 case, 11 U.S.C. § 109(e), wages are the income that typically fuel a chapter 13 plan. An Illinois wage garnishment, however, may remove from the equation as much as 15% of a debtor's gross wages. *See* 735 ILCS 5/12–808(e) (2002). Treating the judgment creditor's garnishment lien as a secured claim in a chapter 13 plan would have "a major, if not devastating, impact on the plan and other creditors," *Rasberry*, 264 B.R. at 499, and would almost certainly close the chapter 13 door on an entire class of debtors.

In arguing that its claim is indeed secured, Triad relies primarily on *Rasberry*. As Triad correctly notes, the court in *Rasberry* did rule that the lienholder has "a secured claim under § 506(b) in the Debtor's earned, but unpaid, pre-petition wages *and future post-petition wages*." *Rasberry*, 264 B.R. at 498 (emphasis added).

The *Rasberry* opinion, however, contains little analysis of the post-petition wages issue, leaving the conclusion that a garnishment lienholder has a secured claim in those wages essentially unexplained. *See id.* at 499–500. Necessarily, then, the court there did not consider the reasoning this court has employed to find the creditor's claim unsecured: that wages are only earned when the work is done, and that the automatic stay prevents the lien from attaching to wages earned post-petition. Apart from the bare holding of the case, nothing in *Rasberry* gives this court any reason to reach the same result.[8]

---

file[d] bankruptcy." Even if the order's terms had not so provided, its effect would have been stayed. 11 U.S.C. § 362(a); *Chase*, 197 B.R. at 660.

7. Indeed, Triad's replacement proof of claim almost tacitly concedes as much. The replacement proof of claim describes the claim as "secured," just as the original proof of claim did, but rather than the car it lists as collateral: "Wage Deduction Order." The wage deduction order, however, is simply a piece of paper, albeit one with legal conse-

quences. In no sense is it "collateral" for any sort of financial obligation.

8. That the *Rasberry* opinion does not contain a fuller analysis is probably not surprising. The garnishment lien issue was raised, not by the creditor or the *pro se* debtor, but by the debtor's employer, which filed a perfunctory motion seeking guidance as the stakeholder of garnished wages. *See id.* at 495–96. Court records show that the initial motion, a short response from the trustee, and an even shorter reply from the employer were the only papers filed. Whether the creditor had a

More troublesome than *Rasberry,* actually, is *In re Coppie,* 728 F.2d 951 (7th Cir.1984) *(per curiam).* The issue in *Coppie* was whether the garnishment of an Indiana debtor's wages within ninety days of the petition constituted a preferential transfer for purposes of section 547. *Id.* at 952. Examining the question under Indiana law, the court found that it did not. In Indiana, once a garnishment summons issues and a hearing takes place, the state court may enter an order declaring a "continuing lien on the future income of the debtor." *Id.* In that event, the court in *Coppie* said, the debtor ceases to have "a property interest" in 10% of his future salary which is instead owed and payable to the garnishor. *Id.* at 952–53. Because future wages belong to the garnishor, there can be no "transfer" for purposes of section 547. *Id.* at 953.

*Coppie* arguably poses problems here, although this case is not about preferential transfers of pre-petition wages, because of the court of appeals' conclusion that a debtor "retain[s] no interest" in his future wages once a garnishment order is entered. *Id.* Given that conclusion, *Coppie* is sometimes cited for the notion that a wage garnishment can continue post-petition unaffected by the stay. Earley is in a bad way if that is what *Coppie* holds, because *Coppie* (unlike *Rasberry*) is binding on this court.

*Coppie* is no help to Triad, however. The court in *Coppie* "repeatedly stressed" that its decision involved Indiana law. *See In re Deardorff,* 195 B.R. 904, 909 (Bankr. W.D.Wis.1996). This case involves Illinois law. In Illinois, the "continuing lien" that arises on service of the garnishment summons does not instantly deprive the debtor of all interest in future wages. *See In re Weatherspoon,* 101 B.R. 533, 539 (Bankr. N.D.Ill.1989) (distinguishing *Coppie*); *see also In re Perry,* 48 B.R. 591, 596 (Bankr. M.D.Tenn.1985) (stating that *Coppie* operates only in a state recognizing service of the summons as "the complete end to the debtor's legal and equitable rights in future wages"). Illinois law is also inconsistent with *Coppie's* apparent premise that a debtor's wages can be transferred even before they are earned.[9] *Coppie* accordingly does not alter this court's determination that Triad's claim is unsecured.

That determination, it should be noted in closing, is not premised on *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the case that Earley argues "controls." In *Hunt,* the Supreme Court upheld an injunction barring a creditor from enforcing a pre-petition wage assignment against wages the debtor had earned post-discharge. *Id. Hunt* is thus sometimes cited for the broad proposition that "a lien cannot attach to future wages in bankruptcy." *See, e.g., In re Rumker,* 184 B.R. 621, 628 (Bankr.S.D.Ga.1995).

---

secured claim in the debtor's post-petition wages was never discussed. The *Rasberry* court did not have the benefit of the briefing this court has had.

9. *Coppie* may in fact no longer be good authority even for the proposition the case expressly decided: that a pre-petition wage garnishment in Indiana is not a preference. *Coppie* was decided before *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), which held that whether a transfer takes place is a question of federal law, not state law, *Morehead,* 249 F.3d at 448.

After *Barnhill,* the Seventh Circuit declared—without mentioning *Coppie*—that pre-*Barnhill* decisions discussing transfer as a matter of state law "do not survive that decision." *In re Freedom Group, Inc.,* 50 F.3d 408, 412 (7th Cir.1995); *see Morehead v. State Farm Mut. Automobile Ins. Co. (In re Morehead),* 249 F.3d 445, 448 (6th Cir.2001) (making this point and refusing to follow *Coppie*); *Deardorff,* 195 B.R. at 908 (making this point and finding "*Coppie's* continuing viability" debatable).

The decision also contains general statements about when wages are earned, statements arguably relevant here. *See Hunt,* 292 U.S. at 243–44, 54 S.Ct. 695.

*Hunt* differs from this case, however, in a critical respect: *Hunt* concerned a lien on wages a debtor earned post-*discharge. Id.* at 238, 54 S.Ct. 695. In holding the lien did not attach to those wages, the Court concluded (1) that the obligation had been "discharged before the wages intended as security were in existence," *id.* at 243, 54 S.Ct. 695 (internal quotation omitted), and (2) that it would impair bankruptcy's "fresh start" policy if a creditor's prepetition lien could attach to wages a debtor earns post-discharge, *id.* at 244–45, 54 S.Ct. 695; *see also Johnson v. Chetto (In re Chetto),* 282 B.R. 215, 218 (Bankr. N.D.Ill.2002) (discussing *Hunt*). There has been no discharge in this case. Nor will there be one until Earley's chapter 13 plan is completed. 11 U.S.C. § 1328(a). In any event, the question Triad raises has nothing to do with an interest in Earley's wages *after* he receives his discharge, and Triad nowhere asserts such an interest. Triad contends only that it has an interest in wages Earley earns post-*petition* and *pre*-discharge—specifically a secured claim that must be treated as such in Earley's plan. *Hunt* not only does not control, then, it has no real bearing on the issue here.

### 4. Conclusion

The claim of Triad Financial Corporation in debtor Robert W. Earley's postpetition wages is unsecured. Triad's objection to confirmation is therefore overruled and its motion to dismiss the case is denied.